WILLIAM H. ROBINSON v. CITY OF MIAMI.

190 So. 35.
Special Division B
Opinion Filed June 23, 1939

*Carl T. Hoffman,* and *L. L. Robinson,* for Petitioner;
*J. W. Watson, Jr.,* and *W. H. Burwell,* for Respondent.

BUFORD, J.—This cause is before us on petition for writ of certiorari to review the judgment of the Circuit Court of Dade County wherein it reversed the judgment in favor of the plaintiff in the Civil Court of Record and directed that court to award a new trial.

The judgment of the Circuit Court is not a final judgment. That is, it does not finally dispose of the cause, nor does it direct the lower court what judgment shall be entered there disposing of the cause. In such cases certiorari does not lie to review the judgment of the Circuit Court. See Waddell v. McAllister, 97 Fla. 1054, 122 So. 578; Hartford Accident, etc., Co. v. City of Thomasville, etc., 100 Fla. 748, 130 So. 7; Jacksonville, etc. Ry. Co. v. Boy, 34 Fla. 389, 16 So. 290; Bringley v. C. I. T. Corporation 119 Fla. 529, 160 So. 680. In the latter case it was said:

"In the case of Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 South. Rep. 483, this Court, in an opinion by Mr.

Justice DAVIS, held that where the Circuit Court as an appellate court reverses the judgment of the trial court, which in that case was the Civil Court of Record for Duval County, and remands the case with directions to the trial court to enter a judgment for the opposite party and not for further proceedings in the lower court, such an adjudication by the Circuit Court is a final one for the disposition of the cause leaving nothing to be done by the trial court except to render the particular judgment directed, and that in such case certiorari would lie to such an adjudication of the Circuit Court made in the exercise of its appellate jurisdiction over inferior courts.

"The rule was reiterated in that case that this Court cannot quash an appellate judgment of the Circuit Court unless it appears from the record that the Circuit Court in the exercise of its appellate jurisdiction has exceeded its jurisdiction, or it did not proceed according to the essential requirements of the law, or violated established principles of law, or that the judgment of the Circuit Court reversing the inferior court of record is a palpable miscarriage of justice, or that the result is a substantial injury to the legal rights of the petitioner, or that the judgment sought to be reviewed is illegal or essentially irregular and violative of established principles of law which have resulted in prejudice and material harm to the petitioner.

"Numerous decisions of this Court were cited as authority for the rule announced.

"In the case of Waddell v. McAllister, 97 Fla. 1054, 122 South. Rep. 578, this Court through Mr. Justice WHITFIELD, said:

" 'Ordinarily the writ of certiorari may not be used to quash a judgment of an inferior court unless such judgment is a final adjudication of the cause.'

"On certiorari this Court has no authority to do more

than either quash the writ of certiorari or quash the judgment brought here by that writ. See Benton v. State, 74 Fla. 30, 76 South. Rep. 341; Am. Ry. Express Co. v. Wetherford, 86 Fla. 626, 98 South. Rep. 820; Ulsch v. Mountain City Mill Co., 103 Fla. 932, 140 South. Rep. 218.

"Where a Circuit Court as an appellate court reverses a judgment of the trial court first because the declaration did not state a cause of action and secondly that the defendant had proven its plea of accord and satisfaction and the appellate court in its judgment directed the *nisi prius* court to direct a verdict for the defendant, the judgment of the appellate court will be quashed as the latter part of the judgment is not in accordance with law and the Circuit Court will be directed to enter such new judgment as may be in accordance with law and justice. See Fla. Power & Light Co. v. Employers Liability Assurance Corp., 109 Fla. 81, 146 South Rep. 850.

"A judgment of the Circuit Court reversing a judgment of the trial Court and remanding the cause for further proceedings is not a final judgment of the cause and certiorari will not lie to such judgment. Kroier v. Kroier, 95 Fla. 865, 116 South. Rep. 753; First Nat. Bank v. Gibbs, 78 Fla. 118, 82 South Rep. 618; Holmberg v. Toomer, 78 Fla. 116, 82 South. Rep. 620.

The exception to that rule was set out in the case of Ulsch v. Mountain City Mill Co. first cited, *supra,* and stated to be that where the judgment reversing the inferior court is a palpable miscarriage of justice, or the result is a substantial injury to the legal rights of the petitioner then in such case certiorari will lie."

So it is that unless we hold that the judgment of the Circuit Court in reversing the judgment of the Civil Court of Record is a palpable miscarriage of justice, or the result

is a substantial injury to the legal rights of the petitioner, certiorari will not lie.

The judgment entered by the Circuit Court, and which is sought to be reviewed in this proceeding, is as follows:

"Defendant in error, plaintiff in the court below, hereinafter called 'plaintiff,' sued the City of Miami in an action of assumpsit to recover the sum of $3,498.95, with interest, said to have been deposited by plaintiff acting through his agent, J. E. Courtney, with A. E. Fuller, Director of Finance of the City of Miami for the purchase of City tax certificates. The declaration is on the common counts. Plaintiff in error, defendant in the court below, hereinafter called 'defendant,' filed two additional pleas to the declaration, first plea being the general issue and second a special plea setting up the facts and circumstances under which the City received the money from the plaintiff, and the circumstances under which the money was returned by the City's check to Courtney. Plaintiff demurred to defendant's second plea and the demurrer was sustained. (This order, the order of the court sustaining the demurrer, is assigned as error.)

"The case came on for trial before the Civil Court of Record, Judge Ross Williams, presiding. After the plaintiff and defendant had presented their testimony, counsel for plaintiff moved for a directed verdict in favor of the plaintiff and against the defendant. The motion was granted by the court and the jury brought in a verdict in favor of the plaintiff and against the defendant as directed, for the full amount claimed by the declaration. A motion for a new trial was made and overruled and final judgment was entered in favor of the plaintiff and against the defendant. Defendant brings error to this court and assigns a number of errors among which are exceptions taken by defendant to the rulings of the court on the admission of evidence.

"This court will consider only the first two assignments of error  Assignment No. 1, ruling on plaintiff's demurrer. The court sustained the demurrer to the second additional plea of the defendant.  This plea attempts to set out the facts and circumstances under which the City received the money from Robinson and if sustained by the evidence would exonerate the City from any claim or demand made by Robinson for the return of the money.  The demurrer should have been overruled.

"The second assignment of error relates to the order of the court denying defendant's motion for a new trial.  In our opinion a new trial should have been granted.

"The evidence incorporated in the bill of exceptions is quite voluminous, but the evidence clearly shows that one, J. E. Courtney, having a power of attorney from Robinson, the plaintiff, delivered to A. E. Fuller, Director of Finance of the City of Miami, a sum of money in cash, to-wit: $3,498.95, on March 13th, 1934.  This money was to be held by the Director of Finance until the City tax sale later on in the year and was to be applied by him on the purchase of City tax sale certificates, if, as and when, the City tax sale was ordered.  Later on, to-wit: May 7th, 1934, the same J. E. Courtney applied to the Director of Finance for a return of the money to him and exhibited a power of attorney from Robinson to himself showing that he had authority to act for Robinson in the matter of the purchase, etc., of tax sale certificates.  The money was returned by the defendant acting through the Director of Finance, by check, for the full amount of the sum advanced, payable to William H. Robinson and the check was delivered to Courtney, the same being endorsed 'Wm. H. Robinson, *By* J. E. Courtney, Power of Attorney' and delivered to the Guaranty Title & Abstract Corp. of Miami in exchange for City of Miami tax sale certificates.  This check was pre-

sented to the First National Bank of Miami and appears to have been paid. Courtney was not a witness in the case for either party and no showing is made as to what became of the tax sale certificates which he purchased with Robinson's money from the Guaranty Title & Abstract Corp., of Miami.

"It is extremely doubtful whether the City of Miami can lawfully be charged with a debt of this character. The money transaction was between Courtney and Fuller. Fuller returned the money by check to Courtney which he had a right to do. Courtney used the money as he was permitted to do under the power of attorney.

"The judgment of the lower court is reversed with direction that the court make an order granting defendant's motion for a new trial. The cost of this proceeding is taxed against defendant-in-error."

While the judgment of the Circuit Court says: "The court sustained the demurrer to the second additional plea of the defendant. This plea attempts to set out the facts and circumstances under which the City received the money from Robinson and, if sustained, by the evidence, would exonerate the City from any claim or demand made by Robinson for the return of the money. The demurrer should have been overruled."—the record shows that the demurrer was addressed to the second third fourth, fifth and sixth additional pleas and was sustained as to each. The additional pleas, *supra,* by variation in language only set up as a defense that the money claimed by the plaintiff had been paid over by the City to the plaintiff through his attorney in fact, who, the pleas allege was duly authorized to receive the money for the plaintiff.

The sixth additional plea is probably no stronger than the others but sets out in more detail the transaction, and is as follows:

"That on, to-wit: March 13th, 1934, and prior thereto,

purchasers of the property at its legal sales day, in the City of Miami, for the non-payment to the defendant of its lawful taxes, and solely for the accommodation of said prospective purchasers, and subject to disbursement, as per their order and demand, money as advance credit upon whatever, if any, purchase of property said prospective purchasers might make at said tax sale of the defendant, refunding to said prospective purchasers, in case of the purchase of property by said prospective purchasers at said tax sale, any unused portion thereof; that during the interim of time between deposit of money by said prospective purchasers and the legal tax sale day of the defendant, under its agreement with said prospective purchasers, made at the time the defendant accepted their money as aforesaid, held said money, charged with the responsibility of using but ordinary and reasonable care in the keeping and disbursement thereof; that on said date the plaintiff, well knowing the premises, entrusted one J. E. Courtney with $3,498.95 of his money for the purpose of, and did authorize said Courtney to deposit said money with defendant, subject to all the terms and conditions aforesaid by which the defendant accepted advance credit money for the purchase of property for non-payment of taxes, as aforesaid; that on said date the plaintiff was unknown to the defendant, and lived in the distant City of Pittsburgh, Pennsylvania; that, pursuant to his said authorization by the plaintiff, said Courtney did deposit said money with the defendant, and the defendant accepted the same under all the terms and conditions aforesaid governing the acceptance by the defendant of advance credit money upon whatever purchase, if any, said Courtney might make for the plaintiff of property in the defendant City at the next ensuing tax sale held by the defendant, said Courtney reserving by his said agreement with the defendant at the time said deposit was

made and accepted by the defendant of said money, the right to demand and receive the return from the defendant of said money of the plaintiff, and the right and privilege to direct the disbursement thereof; that, thereafter, on to-wit: May 7th, 1934, and prior to the date of the next ensuing tax sale, said Courtney advised the defendant that the plaintiff desired to purchase tax certificates of and owned by the defendant then in the defendant City and in the hands of the Guaranty Title & Abstract Company, a Florida corporation, having its principal place of business in the City of Miami; and made a demand upon the defendant for the return of said money so that the same could be used to buy said certificates in hands of said abstract company, that at the time said demand was made on the defendant for the return of said money said Courtney produced and surrendered to the defendant the receipt for said money given him by the defendant, and further exhibited to the defendant a written power of attorney, given him by the plaintiff, a true copy of which is attached to the original pleas filed herein as Exhibit 'B' and by reference made a part hereof; that, acting with reasonable care, prudence and caution, and in full discharge of its responsibility in the acceptance and keeping of said money, and pursuant to the terms of the agreement, whereby the said Courtney deposited said money with the City of Miami, the defendant, at the time of the said Courtney's demand, did draw its lawful check, in due and regular form, payable to the order of the plaintiff, in the amount of money now sued for and demanded by the plaintiff, to-wit: the sum of $3,498.95, a true copy of said check being attached to the original pleas filed herein as Exhibit 'A' and by reference made a part hereof, and did deliver said check to said Courtney, who used the same with said Abstract Company to purchase tax certificates of the defendant, then in the

hands of said Abstract Company, as aforesaid, and said check subsequently cleared through the account of the defendant in the First National Bank of Miami, Florida, and was paid."

The power of attorney referred to in the pleas was as follows:

"KNOW ALL MEN BY THESE PRESENTS, That WILLIAM H. ROBINSON of Pittsburgh,, Pennsylvania, has made, constituted and appointed and by these presents does make, constitute and appoint, J. E. COURTNEY of Miami, Florida, my true and lawful attorney for me and in my name, place and stead to act as my agent in the purchase, sale and exchange of tax certificates in the City of Miami, and the County of Dade and State of Florida, and to, in my name, place and stead, deal in the handling of tax certificates and/or tax deeds or other evidences representing tax liens or tax certificates for the City of Miami and Dade County, Florida, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as full, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof. IN WITNESS WHEREOF, I have hereunto set my hand and seal on this 14th day of April, A. D. 1934."

We deem it unnecessary to enter into a lengthy discussion involving questions of law because it is our opinion that the power of attorney, while in some respects being a limited power of attorney, was entirely sufficient to authorize Courtney to do what the above named additional pleas allege that he did do in connection with the money in the

name of and on behalf of his principal, Robinson. The power of attorney quoted, *supra*, *inter alia*, contains this language: "giving and granting unto my said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as full, to all intents and purposes as I might or could do if personally present," and therefore, the power of attorney not only authorized Courtney to act for Robinson in the purchase of tax certificates but it granted Courtney full power and authority to do every act and thing necessary or requisite to be done in connection with the principal's business of purchasing tax certificates.

Without passing upon the question as to whether or not the Director of Finance of the City of Miami had any power or authority to receive deposits in behalf of the City and thereby bind the City so that it would become responsible for such deposits which were made with the Director of Finance for the purchase of tax certificates to be issued in the future, we may say that if he did have such power and authority then the power of attorney exhibited to him was sufficient authority for him to recognize Courtney as the agent of Robinson in the making and withdrawing of deposits made and withdrawn in connection with Robinson's purchase, or attempted purchase, of tax certificates.

The record shows that when the money was deposited it was deposited as Robinson's money and when demand was made by Courtney for the return of the money to Robinson the Director of Finance delivered to Courtney a check, payable to Robinson, and Courtney cashed the check.

It, therefore, appears that the judgment reversing the inferior court is not a palpable miscarriage of justice, nor is the result a substantial injury to the legal rights of the petitioner. Neither does the judgment of the Circuit Court require the Civil Court of Record in the retrial of the cause

to proceed in violation of any essential requirements of law.

The petition for writ of certiorari is denied.

So ordered.

BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices WHITFIELD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.