BARNARD KILGORE v. JOHN U. BIRD, as Circuit Judge of the Sixth Judicial Circuit of Florida, in and for Pinellas County, and ELVA KILGORE, by her next friend and father, J. C. Cole.

6 So. (2nd) 541                                    En Banc
February 24, 1942

Dickenson & Dickenson, S. Whitehurst's Sons, and Thompson & McMullen, for petitioner.

Anna A. Krivitsky and Howard E. Joseph, for respondents.

WHITFIELD, J.:

A petition for prohibition has been filed but the court decides that prohibition is not the proper remedy in this case. However, leave is given to use the petition as an application for a writ of certiorari upon compliance with Rule. The action is to recover damages for alienation of affection brought by a wife against her husband's father.

A statute provides that in all cases after declaration is filed, the plaintiff may file interrogations on motion for the defendant to answer "upon any matter as to which discovery may be sought."

Among the interrogations required by the Court to be answered are the following:

3. When did your son, Chester W. Kilgore, leave his wife, Eva Kilgore, the plaintiff in this case, and for what reason?

5. Do you know whether your son Chester W. Kilgore did marry without having obtained a divorce?

6. State what knowledge you have prior to your sons, Chester W. Kilgore, leaving Pinellas County, State of Florida, that he intended to remarry?

7. Do you know whether your son Chester W. Kilgore secured a divorce from Elva Kilgore, the plaintiff in this case prior to his remarriage?

9. Is your son living with another woman now?

13. Did you not, upon divers occasions, prior to Chester's abandonment of his wife, Elva Kilgore, express yourself to the effect that it was a mistake on Chester's part to have ever married Elva Kilgore, and to have married into her family?

14. Have you not threatened, either orally or by written statement to send your son, Chester W. Kilgore, out of the State if he continued to live with his wife, Elva Kilgore?

15. Did you not threaten your daughter-in-law, Elva Kilgore, by written communication, to send your son, Chester W. Kilgore, to South America?

16. Is it not a fact that by reason of your personality and wealth you have always exerted great influence on your son, Chester W. Kilgore?

17. Were you not greatly opposed to the marriage of your son Chester W. Kilgore to Elva Kilgore in the first instance?

21. Did you not make the statement to Chester that you would cut off his inheritance by your last Will and Testament if he did not leave his wife, Elva Kilgore, and abide by your wishes in the matter?

22. Did you not make similar statements to the same effect to other parties.

23. Have you not made remarks to your son, Chester W. Kilgore and others derogatory to the character of Elva Kilgore?

25. If such remarks were so made by you, did they have any basis in fact?

27. Did you not make unkind and insulting remarks about your daughter-in-law, Elva Kilgore, to you son, Chester W. Kilgore, and other persons ever since they have been married? Such remarks as the following, and other statements to the same effect; (a) That she was far beneath his station in life socially or/and wealth. (b) That she had not and would not properly take care of her husband, your son, Chester W. Kilgore. (c) That she had not and would not look after his comfort and needs. (d) That she was not the proper person to be his wife. (e) That she would not be able to bear any children to him.

29. Did you not have knowledge that a warrant was obtained and was issued against your son, Chester W. Kilgore, for desertion and non-support; also that he was wanted by the law upon the charge of bigamy?

30. Did you ever make any agreement with either Mrs. Kilgore or any officer of the law, that you would produce Chester to answer these charges?

33. Have you not been corresponding with your son, Chester W. Kilgore, all along every since he left in 1938?

34. Have you not known all along, ever since your son Chester W. Kilgore, left Florida in 1938, as to his whereabouts?

36. Has not your son, Chester W. Kilgore, always been dependant upon you for money?

37. Did you furnish your son, Chester W. Kilgore, with the money on which he was enabled to depart from his home in Pinnellas County?

38. Have you not been furnishing your son, Chester W. Kilgore money since his departure for the purpose of enabling him to stay away from Pinellas County?

40. When did you last hear from your son, Chester W. Kilgore?

41. Where did you hear from him?

42. Where is he at the present?

53. If you did blame her, did you not convey this blame to your son, Chester W. Kilgore?

56. For how many years, and for what length of time did Chester W. Kilgore work for you?

57. Is it not a fact that Chester W. Kilgore, your son, has always been and is now dependant upon you for support upon which to live?

59. Did not Elva Kilgore work to help Chester make ends meet?

69. Was it not in this business that you employed your son, Chester W. Kilgore, to assist you?

70. Did you not tell your son Chester W. Kilgore that you did not care how much money you spent on him and his friends together with the fruit buyers, so long as he did not spend anything on Elva?

71. Have you at any time since Chester's leaving, attempted to persuade Elva Kilgore to get a divorce from Chester?

72. Did you not try to persuade your son, Chester W. Kilgore, to get a divorce, even before he left here?

73. Did you not send your attorney, Mr. James Whitehurst, to your daughter-in-law, Elva Kilgore, trying to persuade her to get a divorce from your son, Chester W. Kilgore.

74. Did you not agree to pay the expenses of the divorce if one was obtained by your daughter-in-law, Elva Kilgore, from your son, Chester W. Kilgore, and pay her some money if she got a divorce from him?

Certiorari is a discretionary common law writ, which, in the absence of an adequate remedy by appeal or writ of error or other remedy afforded by law, a court of law *may* issue in the exercise of a sound judicial or quasi-judicial order or judgment that is unauthorized or violates the essential requirements of controlling law, and that results or reasonably may result in an injury which Section 4 of the Declaration of Rights of the Florida Constitution commands shall be remedied by due course of law in order that right and justice shall be administered. Hartford Accident & Indemnity Co. v. City of Thomasville, 100 Fla. 748, 130 So. 7.

The common law of England and English general statutes in force in 1776 are by statute in force in Florida when not inconsistent with the Constitution and laws of Florida, Section 87 (71) C.G.L. It is not shown that any English statute enacted before 1776 forbids the use of a writ of certiorari except to review final judgments.

There is no statute in this State regulating the judicial use of the common law writ of certiorari. The statute relating to civil courts of record does not

expressly limit the use of a writ of certiorari to a review of final judgments, and if it does so by implication, such limitation is confined to civil court of record cases.

The Constitution expressly provides that the Supreme Court may isssue writs of certiorari and such other writs "necessary or proper to the complete exercise of its jurisdiction," meaning the jurisdiction of causes as defined in the Constitution. The *organic power to issue such writs* is without any limitation upon the discretionary powers of the court as to the use of such discretionary writs when no other adequate remedy is offered by law.

The statutory proceedings for questions to be propounded by the plaintiff and answers thereto by the defendant, etc., to be had in the progress of a law. suit, are distinct from ordinary judicial proceedings; and if such statutory authority is illegally used or so abused as to cause an injury which cannot be adequately remedied by appeal or writ of error after final judgment in the cause, and the statute affords no appellate review of the distinct statutory proceeding, certiorari may be applied before final judgment within the discretion of the appellate court under Section 5, Article V, and Section 4, Declaration of Rights, Florida Constitution; Section 87 (71) C.G.L.

In Florida there are in use several kinds of writs of certiorari, viz: the common law writ, the statutory writ to review judgments of the civil courts of record (Section 5167 C.G.L.), the Rule certiorari to review interlocutory appeals in equity under Rule 34, the Rule certiorari for supplying omitted parts of records on appeals or writs of error, and writs of certiorari issued to review quasi-judicial judgments or orders of quasi-judicial bodies or officers. In Re: Paul Grubb,

116 Fla. 387, 156 So. 482. The common law use of a writ of certiorari to remove a cause from one court to another having trial jurisdiction of such removed cause has not been used in Florida in view of the constitutional and statutory designations of the jurisdiction of the courts in which the judicial power of the State is vested by the Constitution.

Writs of certiorari from the Supreme Court to civil courts of record are authorized by Section 5167 C.G.L. and have reference primarily to a review of final judgments of the circuit courts on writs of error or appeals from final judgments of civil courts of record.

Even such statutory application of a writ of certiorari as above stated does not preclude the Supreme Court from using a discretionary writ of certiorari to review proceedings in any lower courts under Section 5, Article V, of the Constitution when they have acted without authority or the essential requirements of the law have been violated, causing material injury, and no other adequate appellate review is afforded by law.

Proceedings on writs of certiorari issued by the circuit courts are reviewable by the Supreme Court on writ of error or appeal as the law provides. Such writs of certiorari *originate* in the circuit courts.

In cases originating in civil courts of record and reversed in appellate proceedings by the circuit courts, the general rule is that the judgment of the circuit court be a final judgment disposing of the cause on its merits. So if the judgment of reversal merely directs further proceedings, the circuit court judgments are generally not regarded as final judgments to which certiorari will be applied by the Supreme Court; but if in reversing and remanding a cause, the circuit court directs a proceeding to be had by the

civil court of record that is contrary to the essential requirements of the law, the Supreme Court may review such judgment on certiorari, even though it is not in form a final judgment. The essential considerations are whether the judgment, or the directions made a part of it, require an unauthorized proceeding or a departure from the essential requirements of the law and reasonably may cause substantial injury for which no other adequate remedy is afforded by the law. Hartford Accident & Indemnity Co. v. City of Thomasville, 100 Fla. 748, 130 So. 7; Miami Poultry & Egg Co. v. City Ice and Fuel Co., 126 Fla. 563, 172 So. 82; Robinson v. City of Miami, 138 Fla. 696, 190 So. 35; Bringley v. C.I.T. Corp., 119 Fla. 529, 160 So. 680; Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 So. 483, 140 So. 218.

In this case if it is duly shown that the order complained of violates the essential requirements of the law and reasonably may cause the very serious injury complained of which cannot be remedied by any other authorized proceeding, this Court has the power and may *in its discretion* use the discretionary writ of certiorari to review the order if it satisfactorily appears that no other adequate remedy is afforded by law. To await a writ of error or an appeal from the final judgment when rendered will not afford adequate relief under the showing made in applying for a writ of certiorari.

The cause here sought to be reviewed on certiorari originated in the circuit court and not in a civil court of record.

In equity cases appeals from interlocutory orders as well as from final decrees are allowed by statute,

and by Rule 34 interlocutory appeals are adjudicated on interlocutory certiorari.

In law actions no appeal or writ of error is provided for as to interlocutory orders in the trial.

In ruling on objections to interrogatories, the rules of admissibility of evidence are controlling and should be applied. A question which elicits an answer not material to the issues should not be allowed. A question requiring an answer which would violate the civil rights of the witness should be prohibited, because if such right is violated the wrong cannot be righted. It therefore, follows that requiring a witness to answer some questions may constitute error which may or may not warrant reversal on appeal and inflict no injury on the witness, while requiring the witness to answer other questions might so violate his civil rights as to make review on appeal entirely inadequate and would constitute such a departure from the essential requirements of the law as to make a ruling requiring the answer reviewable on certiorari to adequately protect the constitutional or lawful rights of the witness. See State ex rel Barnes 121 Fla. 341, 163 Sou. 715, wherein prohibition was recognized as being available to protect the rights of witness.

Many of the questions, supra, which witness has been required to answer are so framed as to violate the rules of evidence and it appears that some of the others may require a violation of the lawful rights of the witness which may not be mended by review on appeal. Before we can determine the extent of the illegality of the question as distinguished from the impropriety thereof, we must have before us the pleadings on which questions are based.

On motion after notice to opposing counsel, petitioner may amend this position to make it one for certiorari, filing therewith transcript of record as required in such matters.

So ordered.

TERRELL, BUFORD, and ADAMS, JJ., concur.

BROWN, C. J., CHAPMAN, and THOMAS, JJ., dissent.

BROWN, C. J., dissenting:

This is an application or suggestion for writ of prohibition. It appears that the trial court had jurisdiction of the subject matter and of the parties to the cause. It is contended that the court below grievously erred in ordering the defendant to answer certain illegal questions contained in interrogatories propounded by the plaintiff to the defendant under Section 4406 C.G.L., to which questions petitioner had duly objected, to answer which will subject the defendant to prejudicial and irreparable injury; and that he has no other adequate remedy to prevent this unjust invasion of his rights and the consequent effects.

It may be that the court was in error in some of its rulings on the objections to the questions contained in the interrogatories, but that is not a matter which we can consider upon a writ of prohibition. Where, as here, the trial court has jurisdiction of the subject matter of the cause of action and of the parties, the court has the power and authority to rule on all questions arising in the trial of a cause, or in the proceedings leading up to the trial, and this power necessarily implies the power to commit error as well as to rule

correctly. The mere commission of error in the proceedings preliminary to or during a trial, while reviewable on writ of error or appeal, is no ground for writ of prohibition, as such writ cannot issue unless the trial court is acting without jurisdiction or is acting beyond and in excess of its jurisdiction. These principles are so well settled in our decisions that it is hardly necessary to cite authorities to sustain them. See Peacock v. Miller, 123 Fla. 97, 166 So. 212; Harrison v. Murphy, 132 Fla. 579, 181 So. 386; State v. Trammell, 140 Fla. 500, 192 So. 175, and the numerous cases therein cited.

Petitioner, in his support of the availability of the writ of prohibition in this instance, cites the case of State ex rel. v. Barns, 121 Fla. 341, 163 So. 715. From a cursory examination of this case, and especially that paragraph quoted in petitioner's brief, I was at first inclined to the view that petitioner's contention as to the effect of this case was correct, but upon a more careful reading of the opinion, my conclusion is that the last paragraph of the opinion clarifies this particular point and settles it contrary to the contention of the petitioner. In the cited case, plaintiff had obtained a judgment against the defendant for $7500.00 in the Circuit Court of Dade County and thereafter a writ of garnishment was issued and directed to the American Fire and Casualty Co., to which said garnishee filed its answer denying any liability to the judgment defendant, which answer was traversed by the plaintiff. Thereafter certain written interrogatories were propounded to the President of the garnishee corporation, to which interrogatories objections were filed by the garnishee, and upon argument on the subject, Circuit Judge Barns entered

an order directing the President of said garnishee corporation to answer certain of said interrogatories, among which were two interrogatories requiring the president of the garnishee corporation to attach to his answer certain written instruments of said garnishee. The garnishee contended that Section 4406 C.G.L. did not contemplate that a party to whom interrogatories were propounded should be required to attach written instruments to his answer, as Judge Barns had required him to do, and petitioner objected that Judge Barns, in and about the enforcement of said order, was about to exceed the jurisdiction of the circuit court. It was also contended in the petition filed in this Court that the judgment plaintiff was attempting to garnishee the proceeds of a policy of automobile liability insurance issued to the judgment defendant, whereas garnishment proceedings could not be used to effectuate such a purpose. A return was filed to the petition for writ of prohibition, and a demurrer was filed to the return of the circuit judge.

As I understand this opinion, it decided that prohibition was the proper remedy to test the question as to whether or not the court had jurisdiction to issue the writ of garnishment, which was collateral to the main action in which the judgment for damages had been rendered, but the question as to whether or not the court erred in his ruling on the objections to the interrogatories and in making his order for the interrogatories to be answered, it was held that that was a matter which could not be reviewed on writ of prohibition; that this latter matter could only be presented for review on writ of error to the judgment, whereon the ruling in this respect could be assigned as error. As the question here presented is so important, I think it well to quote the pertinent

portions of the court's opinion in State ex rel. v. Barns, supra which are as follows:

"So the questions to be decided in this proceeding are: (1) was prohibition as a remedy properly resorted to by petitioners under the circumstances instead of invoking their remedy by writ of error? (2) If the first question be decided in the affirmative, has a cause for the issuance of a writ of prohibition absolute been made to appear on the facts of the proceedings?

"As to the first question, we think prohibition was properly invoked as a remedy for the situation complained of. Even in cases where a court admittedly has jurisdiction of the parties and of the subject matter of a suit, relief by prohibition will be given in the suit where the Court, in the conduct of the proceedings or trial, has clearly exceeded its proper jurisdiction in some collateral matter, and the remedy by appeal or writ of error, though available after final judgment, would not be *adequate* remedy in the premises. Crandall's Common Law Pleading, par. 473, page 664; State, ex rel. Brooks v. Freeland, 103 Fla. 663, 138 Sou. Rep. 27; Joughin v. Parks, 107 Fla. 833, 147 Sou. Rep. 273, State ex rel. Washburn v. Hutchins, 101 Fla. 773, 135 Sou. Rep. 298; State ex rel. Knott v. Wilmer, 102 Fla. 64, 135 Sou. Rep. 859.

"As to the second question, we are of the opinion that Section 4406 C.G.L., 2734 R.G.S., is a remedial statute of discovery applicable to garnishment proceedings as well as to ordinary actions at law, the words of the statute itself being that it shall be applicable in 'all' causes in any of the Courts of this State. Therefore the circuit judge did not usurp jurisdiction in a collateral matter respecting the application of said Section 4406 C.G.L., supra, to the pending garnishment pro-

ceeding, because said Section 4406 C.G.L. is, as has been just stated, not wholly inapplicable to garnishment proceedings, as petitioner in prohibition contends as the basis for his writ of prohibition.

"Whether or not the circuit court committed reversible error in some of his rulings on the exceptions as to the interrogatories propounded, some of which he sustained and some of which he overruled, is a question to be presented on writ of error to the judgment whereon the rulings may be assigned as error, if in law determinable to be wrong. The Court having jurisdiction of the main cause (the garnishment proceeding,) and of the collateral matter (the interrogatories and discovery proceeding incident to the garnishment) undoubtedly has *jurisdiction* to commit error in either phase of the proceeding, and neither exceeds nor departs from its lawful judicial powers in the premises in so doing, although its judgment may be subject to posterior avoidance and reversal therefor on a writ of error and assignments of error challenging it as having been erroneously arrived at and entered.

"Demurrer to respondent's return overruled."

It seems to me that the last paragraph of the opinion above quoted clearly holds that such a writ of prohibition as is here applied for does not lie.

The question now arises as to whether or not this court treat this application for writ of prohibition as a petition for writ of certiorari and by certiorari review these rulings of the trial court which are complained of in the suggestion for writ of prohibition. My opinion is that certiorari does not lie to interlocutory or preliminary orders or rulings on objections to interrogatories and matters of that kind arising in proceedings in the trial courts in common law cases,

where, as here, the trial court has jurisdiction of the subject matter of the cause and of the parties. I do not recall any case where this has been done. Provision is made by statute and also by rule of this Court for review of interlocutory orders in chancery cases, but in common law cases where the court is acting within its jurisdiction, this Court cannot interfere with the progress of the cause on certiorari before final' judgment even though grievous error be committed. Such error can be assigned in the assignments of error on appeal from the final judgment rendered in the cause, but it is well settled in this State that as a general rule writ of certiorari issuing from this Court only lies to a *final judgment* for which no provision has been made for review by appeal to this Court.

Thus in the case of First National Bank of Gainesville v. Gibbs, 78 Fla. 118, 82 So. 618, this Court speaking through Mr. Justice Whitfield, said:

"On writs of certiorari the ultimate adjudication is to quash the judgment complained of or to quash the writ of certiorari. Basnet v. City of Jacksonville, 18 Fla. 523; State v. Live Oak, P. & G. R. Co., 70 Fla. 564, 70 South Rep. 550; Benton v. State, 74 Fla. 30, 76 South Rep. 341.

*"In this State the Writ of certiorari is used to quash illegal judgments, not to assume and complete the adjudication of a cause.* Ordinarily the writ of certiorari may not be used to quash a judgment of an inferior court unless such judgment is a final adjudication of the cause. 11 C. J. 126; 6 Cyc. 755. See also 3 C. J. 585. In all the cases in this State where the writ of certiorari has been used to quash a judgment of a lower court, they have been in cases

where the judgment of a trial court has been affirmed by the Circuit Court in appellate proceedings, in which cases the Circuit Court had final appellate jurisdiction. Jacksonville, T. & K. W. Ry. Co. v. Boy, 34 Fla. 389, 16 South Rep. 290; Mercaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 714; Malone v. City of Quincy, 66 Fla. 52, 52 South Rep. 922; Balbontin v. State, 68 Fla. 84, 66 South. Rep. 421; State v. Live Oak, P. & G. R. Co. supra. See also Louisville & N. R. Con. v. Sutton, 54 Fla. 247, 44 South. Rep. 946. (Italics supplied.)

"Applications for the writ have been denied or writs issued were quashed in cases where final judgments to which the writ was sought were not regarded as being in excess of jurisdiction or otherwise invalid. Basnet v. City of Jacksonville, supra; Edgerton v. Mayo of Green Cove Springs, 18 Fla. 528; Hunt v. City of Jacksonville, supra. Benton v. State, supra; Harrison v. Frink, 75 Fla. 22, 77 South. Rep. 663. See also Ragland v. State, 55 Fla. 157, 46 South. Rep. 724; Halliday v. Plank Road Co., 6 Fla. 304.

"A judgment on writ of error reversing a judgment and remanding the cause for further proceedings in the lower court is not a final judgment; though an adjudication by an appellate court reversing the judgment of a lower court and rendering a proper judgment, when permissible by the appellate court, may be a final judgment."

It has been considered by many members of the bar that there was a slight departure from this rule in the case of Ulsch v. Mountain City Mill Co. 103 Fla. 932, 138 So. 483. In that case this Court held that where the circuit court, as an appellate court, reverses the judgment of the trial court and remands the case

with directions to the trial court to enter a judgment for the opposite party, and not for further proceedings, such an adjudication by the circuit court is a final one, leaving nothing to be done by the trial court but to render the particular judgment directed, and that in such a case, if there was a departure from the essential requirements of the law by the circuit court, certiorari would lie to such a judgment. This holding was undobutedly sound. There was some language in this opinion to the effect that, for purposes of review by certiorari, a mere judgment of reversal without instructions might be considered final where such judgment was a "palpable miscarriage of justice," or "that the result is a substantial injury to the legal rights of the petitioner," but this language, which was really obiter dictum in that case, could be construed as applying to the subject matter of that certiorari, which was dealing with what the court held to be a final judgment. There was no intimation in the opinion that this Court intended to depart from the long established rule in this jurisdiction that certiorari lies only to a final judgment. It merely qualified out former holdings to the effect that in no case could a judgment of reversal be reviewed on certiorari. This case was cited with evident approval in Bringley v. C. I. T. Corp. 119 Fla. 529, 160 So. 680, which dealt with a judgment of the Circuit Court remanding the cause for a new trial in the civil court of record, or to make such orders and enter such judgment as would be consistent with the decision of the circuit court. It was held that the judgment was reviewable on certiorari, but that it was also in effect a judgment of reversal with directions. But the obiter dictum in the Ulsch case was actually adopted and

applied by this Court in the case of Miami Poultry & Egg Co. v. City Ice & Fuel Co., 126 Fla. 563, 172 Sou. 82, and cited with approval in Robinson v. City of Miami, 138 Fla. 697, 190 So. 35. So it stands approved.

It thus appears that this Court has, practically from the beginning, held that certiorari lies only to a final judgment (see Waddell v. McAllister, 97 Fla. 1054, 122 So. 578, and cases cited) and that the only question in this connection which has given the court any concern was the question of what constitutes a final judgment which can be reviewed on certiorari. Our early holdings, where certiorari was sought to review the action of the circuit courts, when sitting as appellate courts, was, as above pointed out, to the effect that a judgment of affirmance by the circuit court was of course a final judgment, but that a judgment of *reversal* by the circuit court, remanding the cause for a new trial, was not a final judgment. But later on, we held that where the circuit court reversed the lower court with directions, which, if carried out by the lower court, would only result in a judgment for the plaintiff, or the defendant, as the case might be, such a judgment was in effect a final judgment which we could review here on certiorari, there being no opportunity for review by appeal or writ of error; and still later we adopted the further broadening of the rule, which was first stated in the Ulsch case, by which judgments of reversal might be deemed final judgments for purposes of review on writ of certiorari when they came within the exception set forth in the Ulsch case. This is, I think, as far as we can go, if we are to stick to our powers of review by the common law writ of certiorari, granted to us by Section 5 of

Article V of the Constitution of 1885, as the scope and purpose of that writ was established and understood when the Constitution of 1885 was adopted.

There is a part of a sentence in one paragraph in the opinion in the case of Hartford Accident & Indemnity Co. v. City of Thomasville, 100 Fla. 748, 130 So. 7, which is in apparent conflict with all of our previous and subsequent decisions. It reads:

"Ordinarily the judgment of an inferior court will not be reviewed by this Court unless such judgment is a final adjudication of the cause. First National Bank of Gainesville v. Gibbs, 78 Fla. 118, 82 So. R. 618. The writ of certiorari as used in Section 5 of Article V of our Constitution has reference to the common law writ which was employed to review proceedings *before* and after final judgment where there was no adequate remedy at law. 4 Enc. of Pleading and Practice 42." (Italics supplied.)

When we turn to the authority cited, we find that the paragraph on page 42, 4 Encyc. Pleg. & Prac., continues on for several pages. The pertinent observations therein contained, beginning at top of page 42, and continuing on further, are as follows:

"After Judgment.—At common law the writ was more properly used to remove proceedings before judgment, but it was also used after judgment where there was no other adequate remedy at law.

"As a Modified Writ.— (1) In Civil Cases—In general.—The common law writ of certiorari though still used in England and a few of the states, has been modified in its application in the great majority of the states and in the federal courts.

"In these jurisdictions it has been repeatedly held that the writ will lie only to review a final adjudica-

tion. It is not the legitimate office of the writ to divest the inferior jurisdiction of the right of terminating the proceedings, nor to withdraw from it the question to be tried; and the writ will not lie from an interlocutory order, nor from an adjudication which is final by implication merely, notwithstanding the decision is one involving jurisdiction.

"Execution of Judgment.—But it is not necessary to wait until the final order or judgment has been carried into effect. It may be reviewed as soon as a final adjudication has been had.

"Finality Apparent on Face of Writ.—It must appear on the fact of the writ that a final judgment has been rendered or the certiorari will be dismissed."

Our own decisions show that the ancient common law writ, which was confined to questions affecting the jurisdiction of the lower court, 4 Encyc. Pldg. & Prac., p. 90, has never been recognized in this State. It is the modified common law writ which has been adopted and applied in this jurisdiction.

In this State, for instance, the writ has never been limited to cases where the inferior court has proceeded or is proceeding without jurisdiction, but covers those cases where the final judgment of a tribunal has not complied with the essential requirements of the law, and there is no remedy by direct appeal. Fla. Common Law Prac., Crandall, p. 652. See also 5 R. C. L., 253; 14 C. J. S. p. 131, 330; Great Am. Ins. Co. v. Peters, 105 Fla. 380, 141 So. 322; Jacksonville, T. & K. W. R. Co. v. Boy, 34 Fla. 389, 16 So. 290; Basnet v. City of Jacksonville, 18 Fla. 523.

In the case above cited, Hartford Accident & Indemnity Co. v. City of Thomasville, supra, where it is said that the common law writ contemplated by our

Constitution can be used to review proceedings "before" judgment, the precise question was not before the court. In that case the court had before it a final judgment of the circuit court of Duval County. So, the observation that certiorari could be used to review proceedings *before* judgment, founded on the first part of the paragraph on p. 42 of 4 Encyc. of Law, was obiter in that case, and I can find no case where this Court has followed that ancient common law rule, which undoubtedly obtained when the ancient common law writ of certiorari went only to jurisdictional matters. The overwhelming weight of authority in this and other jurisdictions is to the effect that the modified common law writ of certiorari cannot be used to review interlocutory matters, but only to review final adjudications.

My conclusion, therefore, is that this petition for writ of prohibition should be denied, and that if treated by this Court as a petition for writ of certiorari, it must also be denied.

CHAPMAN and THOMAS, JJ., concur.