SOUTHEASTERN TELEPHONE CO. v. RAILROAD & PUBLIC
UTILITIES COMMISSION, et al.

No. 15938.

Circuit Court, Leon County.

June 27, 1958.

Charles S. Ausley and D. Fred McMullen of Ausley, Ausley & McMullen, Tallahassee, and Melvin A. Hardies of Ross, McGowan & O'Keefe, Chicago, for plaintiff.

Lewis W. Petteway and Guyte P. McCord, Jr., Tallahassee, for the commission.

James Messer, Jr., and Leo L. Foster and W. J. Oven, Jr., of Caldwell, Parker, Foster, Oven & Moriarty, all of Tallahassee, for City of Tallahassee.

HUGH M. TAYLOR, Circuit Judge.

The exigencies of this case demand a more detailed order than is usually appropriate as a result of an interlocutory hearing.

The plaintiff, Southeastern Telephone Co., a corporation, hereinafter sometimes referred to as the utility, on March 7, 1958, filed with the Railroad & Public Utilities Commission, hereinafter sometimes referred to as the commission, an application for authority to increase its rates for telephone services, and presented to the commission schedules of proposed increased rates for each exchange operated by it in Florida.

The commission on April 7, 1958 advised the utility that before its application could be finally considered it would be necessary to separate its investment, expenses and income so as to properly distinguish intrastate and interstate transactions[1] to the end that rates on intrastate business could be based entirely upon intrastate operations. It is alleged that this separation will require some six months.

On May 9, 1958, the commission, upon motion of the utility, and without formal hearing or notice to adverse interests, entered its order #2610 authorizing the utility to immediately put into effect the schedules of higher rates requested by it, but as temporary rates, and required the utility to post a bond in the sum of $50,000 to guarantee refunds of any part of such increased rates which might on final hearing be found to be excessive. The bond was filed and the new and higher rates put into effect.

On May 26, 1958, several cities in which the utility operates exchanges filed a petition for revocation of order #2610, contending, among other things, that the order was wholly void because entered without a hearing.

On May 28, 1958 the utility filed with the commission a motion to strike and an answer to this petition of the cities and in this pleading requested an oral argument before any ruling was made.

On May 29, 1958, without adversary hearing, and without notice to the utility, the commission, again acting ex parte, entered its order #2618, in and by which it recognized the cities "as proper parties to this cause", denied the prayer of the utility's answer to the cities' petition, granted the cities' petition, declared order #2610 vacated and ordered the utility to immediately refund the increased charges collected under order #2610. This order "took under consideration" the utility's motion for temporary rates.

---

[1]For some reason, not explained, this separation has not been required of the utility in past rate hearings.

On May 30, 1958 the present suit was filed by the utility seeking a declaration of its rights and an injunction against enforcement of order #2618. On the same day this court entered a temporary restraining order enjoining the commission from enforcing order #2618 or assessing any penalty for its violation until a full hearing could be had upon the prayer for relief pendente lite and setting such hearing for June 16, 1958.

The commission has filed a motion to dismiss the complaint and a motion to dissolve the injunction.

At the beginning of the hearing the cities[2] filed a petition for leave to intervene with leave to attack the propriety of the main action. This motion was granted under rule 3.4. The cities thereupon filed a motion to dismiss the complaint.

The motion to dismiss questioned the jurisdiction of this court. It is contended that (1) this action is an attack upon the validity of order #2618, (2) action of the commission may be reviewed only by certiorari, (3) the complaint in this case cannot be considered a petition for certiorari, and (4), if the complaint can be considered a petition for certiorari, the circuit court has no jurisdiction to issue such writ because the Supreme Court has exclusive jurisdiction to issue certiorari to the commission.

On the other hand the utility asserts that the basic relief sought is the vindication of its right under the due process clauses of the state and federal constitutions to rates which will produce a reasonable return upon its investment, that the delay in the ascertainment of reasonable rates necessitated by the requirement of the commission that its intrastate and interstate business be separated and other delays naturally incident to a full hearing upon its application will cause irreparable injury and loss which cannot be compensated by the rates to be fixed at the conclusion of the final hearing upon its application; that without regard to the validity of orders #2610 and 2618 the enforcement of the rates in effect when its application was filed will deprive it of constitutional rights and that a court of equity is a proper forum in which it may seek relief.

There is nothing in the constitution which purports to exempt the commission from the jurisdiction of the circuit court to issue writs of certiorari. It is doubtful that the language of the statutes cited or rules referred to is intended to exclude this one state agency from the jurisdiction of the same court which has jurisdiction over other state agencies. It is even more doubtful that a statute enacted by the legislature or a general court rule could impair the constitutional jurisdiction of this court. It is, however, unnecessary for the court to answer these questions.

---

[2]The cities were not made parties to the complaint.

The Supreme Court of Florida has said—"The cases relied on by petitioners support the theory well settled in this country that the power to prescribe rates for public utility service is a legislative prerogative which may be done directly or through a commission empowered to do so. The Courts may relieve against unreasonable or discriminatory rates prescribed by the legislature or the commission."[3]

This was written in a case in equity which originated in the circuit court. The commission referred to in that case was the city commission of Tampa, rather than the Railroad & Public Utilities Commission, but the language used by the court clearly indicates that equity jurisdiction to review the legality of rates (as distinguished from an attempt to judicially fix rates) is "well settled".[4]

There is another reason why equity should exercise jurisdiction in this case. The real basis of the plaintiff's case is the allegation that the intervention of a court of equity is necessary to preserve and protect its constitutional rights. If, as plaintiff alleges, order #2618 is void, it might[5] be quashed on certiorari. Then if, as the commission and cities allege, order #2610 is void, it might[5] be quashed on another certiorari. If both orders be void the rates which plaintiff may charge revert to the schedule in effect March 7, 1958, when the first application was filed and the plaintiff has obtained no relief, temporary or permanent, and none is visible over the horizon. The commission has failed to set for hearing the question of rates although it has set a definite date for a hearing on the question of the service being rendered by plaintiff. It is within the broad powers of a court of equity to avoid a multiplicity of suits, to

---

[3]Cooper v. Tampa Electric Co., 17 So. 2d 785.

[4]The original jurisdiction of equity to review rates is entirely consistent with the review of other orders of the commission by certiorari. Rate-making is a legislative process. Cooper v. Tampa Electric Co., supra. The common law writ of certiorari lies to a judicial tribunal or a tribunal exercising judicial powers. Kilgore v. Bird, 6 So. 2d 541. The object of certiorari is to quash an unlawful final judgment or final order. Harrell v. Martin, 154 So. 186. A strict application of these decisions would preclude the use of certiorari to review an order of the commission fixing rates. Such an order is a legislative, not a judicial act and is, therefore, outside the scope of common law certiorari.

[5]Assuming the court did not strictly apply the common law rule referred to in a previous note.

enjoin the enforcement of confiscatory rates, and to review the effect upon property rights of legislative acts which it is claimed deprive parties of their property without due process of law. These powers have been broadened by the Declaratory Judgment Act.

This court is, therefore, of the opinion that as a court of equity it may examine the facts presented by the complaint, declare the rights of the parties insofar as the circumstances justify, and enjoin the enforcement of any order fixing rates, or having the effect of fixing rates, which it finds to be confiscatory or unreasonable.

The statute providing for the regulation of telephone companies was originally enacted in 1913 as the first statute in Florida providing a comprehensive coverage of this subject. The basic sections have remained practically unchanged since that time.

The statutory plan of regulation, as gleaned from the language of the statute, was originally (and therefore still is) that each company should file with the commission its schedule of rates and give the statutory notice to its patrons. Thereafter rates could be changed *by the utility* by giving the necessary notice and filing the new rates with the commission. The commission is given authority to dispense with notice of changed rates.

Once rates are in effect the commission has power to review them on its own motion, or on complaint of others and if found to be unreasonably high or low, the commission has power to fix new rates. These new rates are binding upon the utility and may not be changed by the *utility* without the consent of the commission, or by the *commission* without a hearing.

But the statute clearly contemplates that the *utility* may change a rate, even one fixed by the commission, if the commission consents to the change. Section 364.05 F.S.A.[6]

Of course, the commission itself has power to make a change of rates but the *commission* may change rates only after a hearing. Section 364.14.

---

[6]It is obvious that under the original legislative plan the commission acted as a representative of the public, that is, the patrons of the utilities. The court may take judicial notice of the fact that presently the municipalities in which utilities are located often become the public advocates placing the commission in more of a neutral position. This may be desirable but it does not change the fact that under the statute as drafted the proposal by the utility of a rate and its approval by the commission is legally sufficient because in this transaction the public has been represented by the commission.

Applying these principles to the transactions before the court it is apparent that at the beginning of the proceedings under consideration the utility was operated under a rate schedule fixed by the commission. It could not therefore increase its rates without the consent of the commission, but could, under section 364.05 F.S.A., increase them with the consent of the commission. It applied for and secured the consent of the commission to place the new rates into operation. The statute applicable to the situation had been complied with and the new rates were legal. They were, and are, subject to change by the commission after a hearing in which the utility has an opportunity to defend the changes, but any change in rates effected *by the commission* must be under section 364.14 and must be preceded by a hearing and a finding by the commission of facts justifying a change.

If order #2610 were improvidently entered, it would, within a reasonable time after its entry, be subject to revocation upon reconsideration. But the facts before the court indicate that in reliance upon this order the utility has posted the bond therein required, has adjusted certain of its base rate boundaries and established certain rate zones in accordance therewith, and has collected substantial sums of money pursuant thereto. Under these circumstances the utility has such an interest in the order that the constitutional right of due process of law requires that it be heard upon any reconsideration of the order.

Order #2618 was entered without notice to the utility or a hearing. Authority to enter such an order must stem from one of two sources, (a) the power to reconsider a consent to an increase initiated by the utility under section 364.05, or (b) a change of rates under section 364.14. As has just been noted a reconsideration of an order acted upon and under which the utility's operations have been changed and obligations incurred cannot be had without notice and hearing. Any change of rates under section 364.14 can by the terms of the statute be ordered only after a hearing. It follows that the order of May 29, 1958, designated order #2618, is void because entered without jurisdiction and is subject to collateral attack.

It follows that order #2610 is presently in effect and is valid in the sense that it presently justifies the utility in charging the rates therein specified. By declaring order #2610 to be valid the court is not expressing any opinion as to its propriety, or the correctness of the rates therein authorized. But the utility is authorized to charge these rates until the commission, acting in accordance with the constitution and the laws of the state, makes a change. Such a change may, of course, be on a temporary basis, and may be subject to adjustment after a full hearing when all pertinent evidence is in.

Such temporary rates may be made subject to such conditions as to bond, etc., as may be reasonably imposed by the commission.

It is therefore, considered, ordered, adjudged, decreed and declared—

The motion of the plaintiff to amend its complaint made ore tenus during the hearing of this cause is granted and said amendment has been filed.

The motion of the defendants and intervenors to dismiss the complaint in this cause is hereby denied.

The motion of the defendants to dissolve the temporary injunction entered in this cause is denied, but the continuance of such injunction is made without prejudice to the power of the commission to proceed to set and conduct a hearing for the fixing of temporary reasonable rates to be charged by the plaintiff pending the final consideration of its application for an increase of rates, and without prejudice to the commission putting into effect any new rates found by the commission to be reasonable. Upon the fixing of temporary rates by the commission after a hearing the temporary injunction entered in this cause shall stand dissolved.

Provisions of the preceding paragraph of this decree are without prejudice to the right of the plaintiff—should it deem itself aggrieved by any temporary order of the commission—to apply for relief therefrom in this or other proceedings.

The defendants and intervenors are allowed 15 days within which to answer the amended complaint.