537 So.2d 603 (1988)
Daniel FIESELMAN, Petitioner,
v.
The STATE of Florida, Respondent.
No. 87-2155.
District Court of Appeal of Florida, Third District.
November 22, 1988.
Rehearing Denied December 28, 1988.
Hall and Hedrick and M. Lewis Hall, III, Miami, for petitioner.
Robert A. Butterworth, Atty. Gen., and Richard L. Kaplan, Asst. Atty. Gen., for respondent.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
*604 DANIEL S. PEARSON, Judge.
Daniel Fieselman was charged in the county court with being in actual physical control of a vehicle while under the influence of alcoholic beverages, in violation of Section 316.193(1)(a), Florida Statutes (1985). Fieselman moved to dismiss the charge on the ground that the undisputed facts established that, although he was indisputably under the influence, he was not in actual physical control of the vehicle. The county court dismissed the charge, and the State appealed to the circuit court, which, sitting in its appellate capacity, reversed the county court's order and remanded the cause for further proceedings. The defendant has petitioned this court to issue a writ of certiorari to review the circuit court's order. We deny the defendant's petition.

I.
We consider first whether the decision of the circuit court is one properly reviewable by certiorari.
In Baker v. State, 518 So.2d 457 (Fla. 5th DCA 1988), the Fifth District refused to exercise its certiorari jurisdiction to review a circuit court's reversal of a county court's order dismissing a criminal information. Its reasoning was succinct: a circuit court's order on appeal reversing a county court's dismissal and a circuit court's order at the trial level denying a motion to dismiss "amount to the same thing"; and since, without dispute, the latter is unreviewable by certiorari, the former is likewise unreviewable. Id. at 458.
We do not agree that a trial court order denying a motion to dismiss criminal charges "amounts to the same thing" as a decision of a court, sitting in an appellate capacity, which reverses a trial court's dismissal of criminal charges. To be sure, in each instance the criminal charge remains pending in the trial court, and a plenary appeal to the court having appellate jurisdiction will lie from a future conviction. And, ordinarily, the availability of an eventual plenary appeal is said to bar certiorari review of an interlocutory decision of a trial court denying a motion to dismiss. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987); Brooks v. Owens, 97 So.2d 693 (Fla. 1957); Kilgore v. Bird, 149 Fla. 570, 6 So.2d 541 (1942). However, in our view, this oft-stated rule does not bar certiorari review of an appellate decision of a circuit court which reverses a trial (county) court's order granting a motion to dismiss.
The sole criterion for certiorari review of a circuit court appellate decision is whether the decision departs from the essential requirements of the law, Combs v. State, 436 So.2d 93 (Fla. 1983); see also City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982), and the availability vel non to the ultimately convicted defendant of an adequate remedy by appeal is simply irrelevant.[1] This is so because, unlike a trial court decision which concerns and binds only the immediate litigants, an appellate decision  including, of course, one by the circuit court  establishes law beyond the case in which the decision is rendered. Even as the availability of an adequate remedy by appeal in the event of ultimate conviction is not a ground upon which the Florida Supreme Court would deny certiorari review of an appellate decision of a district court reversing a trial court's dismissal of criminal charges, it is not a ground for denial of certiorari review in the present case. We thus find no impediment to our certiorari jurisdiction and, in this respect, disagree and certify conflict with the Fifth District's decision in Baker v. State, 518 So.2d 457.

II.
We turn now to the merits of the controversy. The facts are undisputed. At about 3:10 a.m., the defendant was found lying down, asleep in the front seat of his automobile. His car was in a parking lot, the car's automatic gear shift was in the park position, its key was in the ignition in *605 the off position, its "lights"[2] were on, and its engine, not running, was cold.
With considerable difficulty  presumably because the defendant was intoxicated  a police officer woke the defendant. Observing the defendant's condition and taking into account the above-described circumstances (but discounting the lack of any direct evidence that the defendant had driven the car in his intoxicated state), the officer placed the defendant under arrest for violating Section 316.193(1), Florida Statutes (1985), which provides that a person who is under the influence of, inter alia, alcoholic beverages is guilty of driving under the influence "if such person is ... in actual physical control of a vehicle within this state... ."
The issue before us, as the reader by now surely knows, is whether, as the county court believed, Fieselman was as a matter of law not in actual physical control of the vehicle in which he was found under the influence of alcoholic beverages, or whether, as the circuit court later ruled, the question of Fieselman's actual physical control vel non was one for the jury to decide.[3]

III.

A.
The State suggests that our task is a simple one. It contends that the present case is controlled by Griffin v. State, 457 So.2d 1070 (Fla. 2d DCA 1984), in which the court, concluding that the circumstantial evidence sufficiently established that the defendant was exercising control over the vehicle while under the influence, rejected the defendant's claim that he was entitled to a judgment of acquittal.
The evidence in Griffin was that
"at approximately 2:30 a.m., a police officer found [defendant] in the driver's seat of a car which was stationary in a traffic lane facing in a direction opposite to that in which traffic was to flow. The engine was stopped, the key was in the ignition, the lights were on, and the footbrake apparently was depressed by petitioner's foot, as indicated by the illumination of the rear brake light on the car. [Defendant] was, or appeared to be, asleep. The brake light went off when the petitioner got out of the car after the arresting officer shook him to awaken him."
Griffin v. State, 457 So.2d at 1071.
According to the court, the particular evidence which showed that the defendant was exercising control over the vehicle at the time he was found under the influence was that the "brake light, ... illuminated when the officer approached the car, went off when [the defendant] got out of the car." Id. Perhaps, as the State argues, a person like Fieselman, who is lying down asleep in the front seat of a stationary motor vehicle, the key to which is in the ignition, but the engine of which is not running, exercises as much control over a vehicle as a person who, sitting asleep in a similarly immobilized but not similarly situated automobile, happens to have his foot depressing the brake pedal. Nonetheless, it is clear from Griffin that the court attached great significance to the fact that Griffin was seated behind the wheel in a car that was found in the middle of the road. Thus, in adopting the views expressed by an Oklahoma court in Hughes v. State, 535 P.2d 1023 (Okla. Crim. App. 1975), the Griffin court stressed "that an intoxicated person seated behind the steering wheel" is in actual physical control of the vehicle because "there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away." Griffin v. State, 457 *606 So.2d at 1072 (quoting from Hughes v. State, 535 P.2d at 1024) (our emphasis).
Griffin does not stand alone in emphasizing that evidence that the defendant was found sitting behind the wheel of the vehicle is a circumstance heavily supporting a finding that the defendant was exercising control over the vehicle. Other courts reaching the same result as Griffin have similarly pointed to the defendant's upright position behind the wheel as an important part of the calculus in determining the question of the defendant's actual physical control over the vehicle. See, e.g., State v. Conley, 754 P.2d 232 (Alaska 1988) (defendant seated behind steering wheel with hands on steering wheel and keys in hand; ignition off); State v. Ruona, 133 Mont. 243, 321 P.2d 615 (1958) (defendant asleep in driver's seat, motor running, car parked in traffic lane of public street); City of Cincinnati v. Kelley, 47 Ohio St.2d 94, 351 N.E.2d 85 (1976) (defendant seated behind steering wheel in possession of ignition key); State v. Webb, 78 Ariz. 8, 274 P.2d 338 (1954).[4] Since this crucial factor is missing in the present case, cases such as Griffin lend little support to the State's position.
Moreover, and even more significantly, Fieselman's vehicle was discovered in a parking lot, not, as Griffin's, in the traveled portion of a public roadway. Thus, unlike State v. Webb, 78 Ariz. 8, 274 P.2d 338 (1954), in which the defendant, who was found passed out or asleep with both hands and head resting on steering wheel of truck with lights on and engine running stopped in lane of traffic, was deemed to be in actual physical control of the vehicle, in the present case there is not "a legitimate inference to be drawn that defendant had of his own choice placed himself behind the wheel [of the vehicle], and had either started the motor or permitted it to run." Id. at 10, 274 P.2d at 340. See State v. Zavala, 136 Ariz. 356, 357, 666 P.2d 456, 457 (1983) (unconscious defendant, although discovered "hanging partially from the window on the driver's side of the truck," could not be convicted of being in actual physical control of the vehicle where the truck was in the parking lane off the traveled portion of the road, the engine was not running, and the ignition was in the off position).
Therefore, rejecting the State's argument that Griffin is indistinguishable, and being persuaded that sleeping in a prone position in the front seat of a vehicle parked in a parking lot, the engine of which is not running, is not itself sufficient to establish actual physical control of the vehicle, we must now decide whether the presence of the car key in the ignition is a fact from which the factfinder could infer that the defendant was  within a reasonable time before being found and while intoxicated  in actual physical control of the vehicle.

B.
Although we recognize, as did the court in Griffin, 457 So.2d at 1072, that a compelling argument can be made that inebriated drivers should be encouraged to pull off the road and "sleep it off," we believe that this argument is more properly directed to the Legislature. See State v. Martin, 5 Ohio Misc.2d 22, 23, 450 N.E.2d 306, 308 (Mun.Ct. 1982) (Legislature's deletion of words "or be in physical control of" vehicle is eminently sensible recognition of the proposition that "[p]ersons who realize that they have consumed too much alcohol should be encouraged to pull off the road and not operate a vehicle on the highways."). Our task  far more limited  is to determine whether, from the evidence that the keys were in the ignition of the vehicle in which Fieselman was found intoxicated and asleep, lying down on the front seat, a reasonable inference can be drawn that *607 Fieselman, while intoxicated, placed the keys in the ignition and thus was at least at that moment in actual physical control of the vehicle while intoxicated.
We believe that such an inference can be drawn since a person who has placed keys in the ignition of a vehicle may be as much in actual physical control of the vehicle as a person seated behind the wheel of the vehicle. As the court recognized in Griffin, a legitimate inference to be drawn from the defendant's sitting position behind the wheel is that the defendant "could have at any time started the automobile and driven away"; this inference is no less legitimate when it is drawn from the presence of the keys in the ignition. As has been observed:
"It does not matter whether the motor is running or is idle nor whether the drunk is in the front seat or in the back seat. His potentiality for harm is lessened but not obviated by a silent motor or a backseat position  provided, of course, that he is the one in control of the car. It only takes a flick of the wrist to start the motor or to engage the gears, and it requires only a moment of time to get under the wheel from the back seat."

State v. Bugger, 483 P.2d at 443 (Ellett, J., dissenting).
Lastly, we point out that evidence that the key was in the ignition does not inexorably lead to the conclusion that the defendant was in actual physical control of the vehicle. It is merely a fact  along with the defendant's presence asleep and intoxicated in the vehicle  which, being capable of establishing the defendant's actual physical control of the vehicle, precludes the conclusion that as a matter of law the defendant was not in actual physical control of the vehicle and thus precludes the entry of a dismissal of the charges.
CERTIORARI DENIED.
NOTES
[1] In Combs, the supreme court modified the decision in Combs v. State, 420 So.2d 316 (Fla. 5th DCA 1982), in which the Fifth District had adopted, as it later did in Baker, a similarly narrow view of its certiorari jurisdiction over circuit court appellate decisions.
[2] It is not clear from the meager record before us whether the lights referred to are the car's headlamps, parking lights, or interior lights.
[3] The issue is not whether the defendant was "operating" the vehicle within the meaning of the statute, see State v. Daly, 64 N.J. 122, 313 A.2d 194 (1973), and there is no claim that the vehicle was inoperable so as to make it impossible for one to be in actual physical control of a vehicle which falls within the statute, see Jones v. State, 510 So.2d 1147 (Fla. 1st DCA 1987); Johnson v. State, 518 N.E.2d 1127 (Ind. Ct. App. 1988).
[4] In State v. Bugger, 25 Utah 2d 404, 483 P.2d 442 (1971), the defendant, found asleep in his automobile parked on the shoulder of a road, was charged with being in actual physical control of the motor vehicle while under the influence. The court reversed the defendant's conviction, finding inapposite cases "where the driver was seated in his vehicle on the traveled portion of the highway; or where the motor of the vehicle was operating; or where the driver was attempting to steer the automobile while it was in motion; or where he was attempting to brake the vehicle to arrest its motion." State v. Bugger, 25 Utah 2d at ___, 483 P.2d at 443.