**DAVID A. GOODKIND v. FRANK WOLKOWSKY, as Administrator of the Estate of A. Wolkowsky, deceased.**

9 So. (2nd) 553             En Banc
July 10, 1942      Rehearing Denied September 29, 1942

64

Marshall F. Sanders and Leonard Epstein, for petitioner.

Redfearn & Ferrell, Ward & Ward, and E. Clyde Vining, for respondent.

BROWN, C. J.:

This is the third appearance of this cause in this Court. The case has been in the courts for some eight years or more.

On December 7, 1934, David A. Goodkind, plaintiff below and petitioner for writ of certiorari here, filed in the Civil Court of Record of Dade County an amended declaration, consisting of a single special count, for the recovery of $4,000. and interest for the breach of a written contract of employment, dated April 10, 1931, by which he was employed to represent Wolkowsky and three others before the Treasury Department and the U. S. Board. of Tax Appeals in an income tax dispute involving large sums, for which services he was to be paid $4000.00 upon the final determination of the controversy. The payment of this amount in accordance with the contract was guaranteed in writing by A. Walkowsky, against whose administrator the suit was brought. Copies of the contract and the contract of guaranty were attached to the amended declaration, which further alleged that plaintiff entered upon his duties and engaged himself in the performance of the contract and substantially performed the same on his part, and that while he was so engaged in performance of the contract, he was, on October 17, 1931, wrongfully

discharged, and his demand for payment of the agreed and guaranteed compensation was refused.

The civil court of record sustained a demurrer to this amended declaration on the ground that, on the facts alleged, plaintiff's right to recover must be restricted to reasonable compensation for the value of the services performed prior to his discharge. Plaintiff refused to plead further and judgment was entered against him, whereupon he took writ of error to the circuit court, the judges of which court, being evenly divided on the question, two for affirmance and two for reversal, the Court entered a judgment of affirmance, and petition for rehearing having been denied, said judgment of affirmance was brought before this Court for review on certiorari. Our opinion and decision on this first writ of certiorari is reported in 132 Fla. 63, 180 So. 538, in which opinion we stated that the only question presented was the legal sufficiency of the said special count to withstand demurrer. And in that opinion, after reviewing the authorities on the controlling question involved, we stated our conclusion as to the law in the following language:

"We are inclined to follow the majority of the courts in holding that the discharge of an attorney, without cause, employed for a specified purpose and for a definite fee, after there has been substantial performance on the part of the attorney, is a breach of the contract for which an action for damages will lie against the client for the fee agreed upon."

We then proceeded to hold that the amended declaration stated a good cause of action and was not subject to demurrer, and that the trial court erred in sustaining the demurrer. The judgment of the circuit court affirming the trial court was accordingly

68

quashed "with directions for further proceedings consistent with the views hereinabove expressed."

Later, in December, 1939, after the case had been remanded, a trial was had in the civil court of record on said amended declaration and a plea alleging in substance that at the time the contract was canceled on October 14, 1931, "plaintiff had not substantially performed the services agreed to be performed by him in accordance with the provisions of said contract sued upon." The trial resulted in a verdict for the plaintiff in the sum of $4,000.00 being the fee agreed to be paid in the contract, together with interest from March 16, 1933. The trial judge evidently attempted, and we think quite successfully so far as this record discloses, to follow the law as laid down by this Court in the opinion above referred to. The transcript of record presented here in support of the petition for writ of certiorari shows some of the charges given by the trial court. One given by the court of its own motion reads as follows:

"However, in this case the defendant has come into court and has submitted testimony conflicting with plaintiff's testimony, and that presents the issue for you to decide. That is, where does the truth of the case lie? Is the plaintiff right in his contentions or is the defendant right in its contentions as to the liability?"

The court also gave the following charges at the request of the defendant Wolkowsky:

"1. This is a suit on a contract of guaranty and the nature and extent of liability of a guarantor depends upon the terms of his contract of guaranty and he is bound only to the extent and in the manner stated in his contract of guaranty. By the terms of the

contract or letter of employment herein sued on, A. Wolkowsky guaranteed the payment of the amount therein set forth for services which the plaintiff was to perform in behalf of the tax payers therein named before the Treasury Department and the United States Board of Tax Appeals at the time there should be a fiinal determination of the tax as handed down by the United States Board of Tax Appeals or as the result of compromise or settlement with the Commissioner of Internal Revenue, and you are charged that the defendant would not be liable for any wrongful discharge, if any, unless the plaintiff, at the time of his discharge had substantially performed the agreement."

"2. The issue in this case is not whether the plaintiff was prevented from the full and complete performance of the services which he was employed to perform, but whether he had substantially performed the services which he had been employed to perform prior to October 14, 1931, the date when the principal, I, Wolkowsky, by letter to the plaintiff canceled the letter of employment and discharged the plaintiff. By substantial performance is meant not an exact performance in every slight or unimportant detail, but a performance of all important particulars which were required to accomplish the intention and purpose of the parties as set forth in the contract of employment, and unless you believe from a preponderance of the evidence that there was such a performance on the part of the plaintiff, you should return a verdict in favor of the defendant."

"3. If you find that plaintiff in this case has proved by a preponderance of the evidence that he had substantially performed his contract at the time he

was discharged, then your verdict will be for the plaintiff.

"If, on the other hand, you find that plaintiff in this case has not proved by a preponderance of the evidence that he had substantially performed his contract at the time he was discharged, then your verdict will be for the defendant."

A motion for new trial was filed on December 23, 1939, on ten grounds, one of which was that the verdict was contrary to the weight of the evidence. This motion was not acted upon until June, 1940, when the same was granted, on each and all grounds, and the verdict set aside, by Civil Court of Record Judges Herferman and Hendry; Judge Ross Williams, who had tried the case, meanwhile having been elevated to the circuit court bench in the latter part of December, 1939.

To this order writ of error was sued out by plantiff to the circuit court on July 3, 1940, and the circuit court considered the case en banc, and rendered an opinion in which it was held inter alia that the contract of employment and the discharge of the plaintiff before complete performance "seems to have been well established," and that plaintiff was entitled to his damages, "and then comes the question of the measure of damages." The circuit court in its opinion further stated that "under the charges to the jury, it appears that the jury had to find for the plaintiff in the full amount or else for the defendant." That was exactly what the trial court should have charged the jury, on the pleadings in this case, in the light of this Court's former opinion in 132 Fla. 63, 180 So. 538, but the circuit court had a different view, and by a course of

reasoning set forth in its opinion it reached the following conclusion and order:

"It appears that liability of the defendant has been regularly established by the rendition of the verdict of the jury but that a new trial should be had only as to the amount of damages. Wherefore, "It is ordered that the cause stand affirmed as to granting of a new trial in so far as damages are concerned but in all other respects reversed and ordered remanded for trial upon the question of the amount of damages."

The opinion and order just referred to was concurred in by four of the circuit judges, Judge Milledge not participating and Judge Ross Williams being disqualified. Defendant in error Wolkowsky filed a petition for rehearing, which was denied in an opinion concurred in by Judge Barns, Trammell, Gomez and Hunt, wherein the holding by this Court on the first certiorari, and quoted earlier in this opinion, was held to be dictum. Judge Stanley Milledge filed a dissenting opinion, in which he said that he did not think the quoted passage was dictum, and that "if it is not, then the Supreme Court decision is the law of the case on the measure of damages." He correctly concluded that the trial court "was not in error in submitting the case to the jury on the measure of damages as stated by the Supreme Court," and that "the order of the Civil Court of Record granting a new trial should be reversed and the judgment for damages obtained by the plaintiff should be made final."

To this judgment of the circuit court "that the cause stand affirmed as to granting of a new trial in so far as damages are concerned, but in all other respects reversed," and remanding the case "for trial upon the question of the amount of damages," Goodkind filed

here a second petition for writ of certiorari, alleging that the remanding of the cause for trial "upon the question of the amount of damages" was a departure from the essential requirements of the law, as established by the opinion of the Supreme Court on the first certiorari. This petition was granted and the said judgment of the circuit court quashed, and in an opinion this Court reviewed the action of the circuit court and held that it was in error in holding that the language of this Court hereinabove set forth, and quoted from our first opinion in Goodkind v. Wolkowsky, 132 Fla. 63, 180 So. 538, was dictum, but, far from being dictum, it constituted the holding of this court on the central question in the case and thereby became "the law of the case, which it was the duty of the circuit court to follow and apply." So the judgment was quashed by this court, "with directions for further proceedings not inconsistent with the views hereinabove expressed." See Goodkind v. Wolkowsky, 147 Fla. 415, 2 Sou. (2nd) 723.

In spite of the reluctance of the circuit court to accept them, there is nothing revolutionary about our former holdings in this cause. We have long held that a similar rule is applicable to ordinary contracts for personal services when made with agents or employees. See Harris v. Coconut Grove Dev. Co., 63 Fla. 175, 59 So. 11; Hazen v. Cobb, 96 Fla. 151, 117 So. 853; h.n. 20 and 21; and the principle involved is given even a wider scope in Pollardy-Watrous Ins. Agency v. M. Tucker, Inc., 120 Fla. 895, 163 So. 284. And in a recent case, we again extended the rule to contracts between attorney and client and held that when a board of county commissioners, vested with statutory authority, employed a county attorney at a salary of

$5000.00 per year for a period of two years, payable monthly, and about five months later discharged him without cause, and employed another attorney to perform the same kind of services at the same salary for the remainder of the two year period, the County was liable to the discharged attorney for the full amount of the $5000.00 per year salary for the remainder of such two year period he having been paid his salary up to the time of his discharge. See Hillsborough County v. Suttton, 8 So. (2nd) 401, 150 Fla. 601. The fact that the county had paid out a like amount for legal services to the newly employed attorney during the period involved, which fact as I recall it was admitted, did not affect Mr. Sutton's right to recover, and the Court in its opinion written by Mr. Justice ADAMS, did not deem it necessary to discuss the point in its opinion.

After our mandate went down in June, 1941, on the second writ of certiorari, this case, which had theretofore been handled by the circuit court en banc, was considered by only three of the circuit judges, and by a two to one vote the order of the civil court of record, granting a new trial on each of the ten grounds stated in the motion, was on November 14, 1941, affirmed in toto. Thus two members of an appellate court of six judges, only one of whom was disqualified, made an order which was inconsistent with the former action of the same court, 4 to 1, sitting en banc, and also inconsistent with the opinion of this court upon which the mandate was based. The majority opinion on this last judgment was written by Judge Arthur Gomez, concurred in by Judge Worth W. Trammell. A dissenting opinion was filed by Judge Paul D. Barns, senior circuit judge.

Once a "banc" case, always a banc case, no matter how frequently the case re-appears in the same appellate court, is the customary practice, at least in the absence of any legal requirement to the contrary.

Doubtless the three circuit judges thought they were justified in adopting the unusual course above outlined by reason of Chapter 20309, Acts of 1941, which provides that when a circuit court has more than four circuit judges, the appellate jurisdiction of such court, except as to appeals from a municipal court or justice of the peace, shall be exercised by the circuit judges sitting in divisions, each division consisting of three circuit judges inclusive of the presiding judge; the presiding judge to act for the court in the same manner as paragraph (c), Sec. 4, Art. V, of the Constitution provides that the Chief Justice shall act for the Supreme Court; etc. This appears to be a valid Act, but it did not go into effect until August 5, 1941, which was sixty days after the Legislature adjourned on June 6, 1941, whereas the mandate of this Court, addressed to the circuit court in its appellate capacity as then legally constituted, went down and was lodged in the circuit court on June 25, 1941. The law in effect at that time, Chapter 15666, Acts of 1931, made it the duty of each and all members of the circuit court to participate in the hearings on appeals from the civil court of record, a majority of the circuit judges to constitute a quorum, and further provided that the concurrence of a majority of the members of the court should be necessary to a decision. The said act also required the court to sit en banc to hear appeals on certain days in the year, one of these appeal days being the second Monday in July of each year. The mandate of

this court, which was lodged in the circuit court on June 25, 1941, quashed the judgment of the circuit court and remanded the cause for further proceedings not inconsistent with the views expressed in this Court's opinion, and "according to right, justice, and the judgment of said Supreme Court and the laws of the State of Florida," etc. This mandate was directed to the circuit court, acting as an appellate court, as then constituted, i.e., to a court consisting of six members, less, of course, the one disqualified member who did not participate, and it became the duty of five participating judges to act on this appeal on the second Monday in July, 1941, or as soon thereafter as could reasonably be done under the circumstances. This jurisdiction to act in accordance with this Court's mandate was conferred upon an appellate court consisting of all five of the qualified members of the circuit court when this Court's mandate went down on June 25, 1941. No action was taken until November, 1941. No doubt there were good reasons for this delay. Meanwhile, Chapter 20309, the Act authorizing action by the court through divisions of three judges, took effect August 5, 1941, and three judges took action in November, 1941. As to whether there had been any formal action taken by the circuit court organizing the court into divisions when this case was taken up for consideration by the three judges, the record is silent. We must assume therefore that this had been done. Did this legislative Act result in depriving the other two circuit judges, who were qualified, of the right and duty to participate in the decision of this cause which they had when, and after, our mandate went down on June 25, 1941? While the Act took effect on August 5, 1941, forty days after the

mandate went down, the jurisdiction had theretofore vested in the appellate court of five qualified judges under said Chapter 15666 to proceed further in accordance with the opinion of this Court, and if we should hold that this jurisdiction was divested when Chapter 20309 later became effective, would not this be giving the Act a retrospective operation, not required by the language of the Act, and thereby enabling two out of three circuit judges to render a decision in a cause in which five qualified members of the court had rendered the previous decision by a 4 to 1 vote, and who still constituted the court to whom the mandate of this Court was addressed at the time it went down?

It is true there was an attempt to repeal said Chapter 15666 (requiring all the circuit judges to participate in hearing and deciding appeals) by Chapter 20361, Acts of 1941, which, if it was a valid act, likewise did not go into effect until August 5, 1941. Thus Chapter 15666 remained in effect until that date at least. Petitioner contends that Chapter 20361 violates Section 16 of Article III of the Constitution, in that the title limits the Act to circuit courts having more than four circuit judges, whereas the body of the Act expressly applies to all circuit courts in counties wherein there is a civil court of record. We deem it unnecessary for us to pass on that question, but if Chapter 20361 is a valid Act, then the legal effect of Section 1 of said Act, where one member of a division dissents, would be to require that the case be considered and decided by the court en banc, that is, by the qualified members of both divisions. Thus there is a serious question, as above pointed out, as to whether the three circuit judges

who participated in the decision of this case in November of 1941, one of the three dissenting, had the power to decide the same without the participation of the other qualified members of the Circuit Court of Dade County, constituting both divisions, thus making it a "banc" case, just as it was when the mandate went down. As a sidelight on the question presented, though not divisive here, see the recent decision of the Federal Supreme Court in Gorman v. Washington University, advance sheets of 86 Law ed., at page 895, (316 U. S. 98, 62 S.C. 962, 86 L. Ed. 1777).

Thus it appears that the order of the civil court of record granting defendant Wolkowsky's motion for new trial on each and all of the ten grounds by the Circuit court at first reversed in all respects save one and was remanded for new trial on the single ground of *the amount of recoverable damages;* the circuit court holding that plaintiff was only entitled to recover the reasonable value of the services performed up to the time of his wrongful discharge, and that the trial judge was in error in charging the jury that if plaintiff had substantially performed his contract up to the time of his discharge he would recover the full fee of $4000.00 provided for in the contract. In our former opinion reviewing this judgment (147 Fla. 415, 2 So. [2nd] 723) we held that the Circuit Court, in its holding on this question of recoverable damages, was in error and had departed from the law of the case as enunciated by this Court on the first appearance of this cause here (see 132 Fla. 63, 180 So. 538) and quashed the judgment of the circuit court and remanded the cause for further proceedings not inconsistent with this Court's opinion. Thus, in our former opinion we pointed out and grounded our

opinion upon the only departure from the law of the case which had been complained of in the petition for certiorari, and which was also the only point upon which the circuit court had held that the order granting a new trial could be affirmed. In its said order the circuit court *reversed* the order granting a new trial *on all the other grounds,* and in this respect this Court did not hold that the Circuit Court had erred. So the former order of the circuit court *reversing* the granting of a new trial *on all the other grounds* was left to stand, so far as the logic and effect of our opinion was concerned. But, as is our custom in practically all common law certiorari cases, except where portions of a judgment are clearly divisible, we quashed the judgment as a whole, with directions for further proceedings not inconsistent with this Court's opinion. See Am. Ry. Express Co. v. Fegenbush, 107 Fla. 146, 144 So. 320.

As above stated in November, 1941, some five months after mandate went down, three of the circuit judges, purporting to act for the court, considered the case, and by a two to one vote, the order of the civil court of record granting a new trial *on all the grounds stated in the motion,* was affirmed; a decision conflicting in large part with the former decision of the court sitting en banc. Assuming that they had the power so to act, was this action a departure from the essential requirements of the law, and if so, can it be reviewed here by certiorari?

The first three grounds of the motion for new trial are the usual grounds addressed to the sufficiency of the evidence to sustain the verdict. We cannot on this certiorari proceeding pass on that question. Fur-

thermore, on this transcript, we do not have the evidence before us.

It will be recalled that the contract of employment was made April 10, 1931, and the declaration alleged that plaintiff entered upon his duties and engaged himself in the performance of the contract and substantially performed the same until he was wrongfully discharged on October 17, 1931, some six months later. The defendant's plea did not deny the execution of the contract, or the plaintiff's discharge. It merely denied that the plaintiff had substantially performed the contract when the same was "canceled" in October, 1931. So the issue presented was whether or not the plaintiff had substantially performed his contract *up to the time of his discharge* some six months after the contract was made. On this issue, the jury found for the plaintiff. The 4th, 7th and 10th grounds of the motion for new trial were as follows:

"4. The evidence in behalf of the defendant with respect to the amount of work done in the completion of the contract after the plaintiff's discharge, and the necessity of such work, and the results accomplished thereby, is uncontradicted and demanded a verdict in favor of the defendant."

"7. The court erred in not permitting the defendant to introduce evidence with respect to the time spent by the defendant's representatives in doing the work they did in the matter subsequent to the discharge of the plaintiff which work plaintiff would have been required to do under his contract for the reason that time spent in doing work is relevant in that it tends to show the amount of work done and by comparison with that done by the plaintiff, it tends to show

whether or not there had been substantial performance on the part of plaintiff."

"10. The court erred in charging the jury with respect to performance to the contract as follows: 'The question is, up to October 17, 1931, had he substantially performed it? If There Were Things to be Done, If There Was One Thing to Be Done, Necessary for the Substantial Performance of the Agreement up to That Time, He Is Not Entitled to Recover. If He Had Substantially Performed It up to That Time, If He Only Did One Thing But That Brought About the Results, That Is Substantial Performance of the Agreement and He is Entitled to Recover.' Said charge was erroneous in that it is susceptible to the construction that if the plaintiff had done everything necessary to be done up to October 17, 1931, that would be substantial performance up to that time, and he would be entitled to recover."

By sustaining the motion for new trial on these three grounds, the two to one decision of the circuit court in effect instructed the civil court of record, when the case was tried again, to try the case upon erroneous conception of the law, which could not be otherwise than highly prejudicial, if not indeed entirely disastrous, to the plaintiff. This is further shown by the following quotation from the majority opinion of Judge Gomez:

"In the instant case, it appears from the evidence that subsequent to the discharge of the plaintiff the field agents of the government completed their investigation, filed their reports, and that those reports were analyzed, briefs were prepared, and a four days trial was had in the matter in Washington, which was conducted by other attorneys employed by the

taxpayers, at which trial the government's claim was adjusted for approximately $3,700.00 instead of $210,000.00 claimed by the government, and the plaintiff admitted that he had no further connection with the matter and performed no services therein after his discharge. From this it is obvious that under no view of the case can it be said that the plaintiff substantially performed the services for which he was employed to perform. Substantial performance means full performance in all those essentials necessary to the accomplishment of the entire purpose and intention of the parties. Substantial performance means strict performance in all essentials necessary to the full accomplishment of the purpose for which the thing contracted for was designed."

The dissenting opinion of Judge Barns presents his viewpoint as follows:

"The trial court's order granting a new trial was reversed except as to damages by this court and the Supreme Court in turn has quashed our judgment.

"Our reasons were that we thought the trial court had accepted a statement of the Supreme Court too literally and that the correct law was as set forth in our quashed judgment.

"It now appears that such was not the correct law but that the true law was as stated by the Supreme Court initially.

"Upon examining the record we find that the trial court tried the cause upon the principle first enunciated by the Supreme Court which we erroneously classed as dicta.

"The new trial was granted by judges other than the trial judge; therefore we occupy the position of

the judge granting the new trial with no disadvantages of record.

"I find no reversible error in the trial proceedings, and that the trial court erred in granting a new trial, and that the order granting a new trial should stand reversed."

Judge Barns' opinion is consistent with the former opinion of the circuit court except as to the measure of recoverable damages, on which point he, in this opinion, follows this Court's ruling.

We have held in both our former opinions in this case that the amended declaration stated a good cause of action. That declaration alleged in effect that the plaintiff had substantially performed the written contract of April 10, 1931, up to the time of his discharge without cause on October 17, 1931, a little over six months after the contract was made. Of course plaintiff could not have continued to engage in the substantial performance or any sort of performance of the contract after he was discharged. The defendant, by discharging him, prevented not only the continuance of substantial performance on plaintiff's part but also the completion of the services contemplated by the contract, thus making it impossible for plaintiff to render a complete performance of the contract. It necessarily follows that the question properly to be submitted to the jury under this declaration and plea was whether or not the plaintiff had engaged himself in the substantial performance of the contract up to the time of his discharge. It appears from three charges given by the trial court at the defendant's request (quoted in the earlier portion of this opinion) considered in connection with the quotation of a part of the trial

court's charge, complained of as being erroneous, in ground 10 of the motion for new trial, this controlling question was fairly presented to the jury by the trial judge, and in so far as the charges are concerned, we agree with Judge Barns that no reversible error is made to appear.

We take it from these charges and from the statements in the opinion of Judge Gomez that the trial court had permitted the defendant to introduce evidence tending to show in a general way the work that was done by those who were employed by the defendant Wolkowsky, after plaintiff's discharge, to complete the services contemplated by the contract made with plaintiff, but that the trial court did not permit the defendant to prove the *time* spent by plaintiff's successors in completing the work. See ground 7 of the motion for new trial. We find no reversible error on the part of the trial court in this respect. Indeed, if the plaintiff proved substantial performance on his part up to the time of his wrongful discharge, he was entitled to recover the full amount of the contract fee, in spite of the fact that much work yet remained to be done to complete the work stipulated for in the contract. That was, in effect, the holding of this court in the recent opinion and decision in the case of Hillsborough County v. Sutton, supra.

In ground 10 of the motion for new trial, a part of the trial court's charge on this subject is quoted, and then follows this statement of the movant: "Said charge was erroneous in that it is susceptible to the construction that if plaintiff had done everything necessary to be done up to October 17, 1931, that would be substantial performance up to that time, and he would be entitled to recover." Now, if that

charge was susceptible to the construction thus placed upon it by the defendant's able counsel, and we think it was, then it was not "erroneous" on the ground. Especially is this true when that charge is considered in connection with the charges given by the court at the request of the defendant, as shown by this record. The above stated attack on this charge, and the statements made in the opinion of Judge Gomez, reveal a fundamental misconception of the law on this central and controlling question in this case. By holding that the civil court of record was correct in granting a new trial on the above quoted grounds of the motion for new trial, numbered 4, 7 and 10, and in affirming, or attempting to affirm, the trial court's action by the action of two circuit judges out of three who participated, the civil court of record was thereby instructed that on such new trial the plaintiff would not be entitled to recover, even though he should prove that he had done everything necessary to be done under the contract up to the time of his discharge, which was about six months after the contract was made. In other words, that even if plaintiff should, on a new trial, prove that he had performed everything necessary to be done under the contract up to the time of his wrongful discharge, he would not be proving "substantial performance" up to the time when defendant, by discharging him, made further performance impossible, and that therefore plaintiff would not be entitled to recover. This would be sending the case back to the civil court of record on a judgment which would require the civil court of record, on another trial, to depart from the essential requirements of the law on the main question of law involved in the case. So, assuming that this was a judgment of the legally

constituted Circuit Court in and for Dade County, sitting as an appellate court, this judgment itself, in the vital respect above pointed out, constituted a departure from the essential requirements of the law, which would necessarily result in substantial injury to the legal rights of the plaintiff, who is the petitioner here. This is necessarily so, because the civil court of record is bound to follow, on another trial, the judgment and ruling of the circuit court, which is to the effect that each and every ground of the motion for new trial was good and sufficient in law, and it is also in duty bound to follow the legal principles as outlined and applied in the opinion of the circuit court on which its judgment is based and which accompanies its mandate to the trial court. To the trial court, these become instructions as to "the law of the case" which it is bound to follow.

As was pointed out in one of the authorities cited in our first opinion in this case, it is but just that attorneys should be accorded the same effective remedy for breach of contract of employment, and the same measure of damages, that is accorded to other persons,—at least in those cases where the attorney is employed for a specific purpose, or for a specified time, and for a fee agreed on in the contract, and is discharged without cause, after substantial performance on his part, the measure of damages in such cases being the full fee expressed in the contract. In such cases, where the client breaks his contract by disharging his attorney without cause, he makes it difficult in some cases, and in some practically impossible, for the attorney to prove the amount of his injury under the rule of *quantum meruit,* i.e. the reasonable value of the services performed by him up

to the time of his discharge. If in such cases, the client wrongfully prevents the full performance which would entitle the attorney to the specific recompense agreed on, it is but just that the client should be held liable for the full compensation he agreed to pay, in case the attorney sues on the contract for the breach thereof. The attorney is not compelled to waive the contract fee and sue merely for the reasonable value of the services performed up to the time of his discharge without cause, i.e. on a *quantum meruit* basis, but he can rightfully stand upon the contract which he has in good faith substantially performed up to the time to his discharge. The *power* of the client to terminate the attorney's employment, must be distinguished from his *right* to do so.

The general rule is that this court will not, on certiorari, quash a judgment of the circuit court rendered in the exercise of its final appellate jurisdiction unless such judgment is a final adjudication of the case, or so final in its nature as to amount to a final adjudication. But there are certain well recognized exceptions. These are: Where the judgment of the circuit court is rendered without or in excess of its jurisdiction; where the judgment of the circuit court is a palpable miscarriage of justice; or where the result of such judgment would constitute a substantial injury to the legal rights of the petitioner; or where the judgment sought to be reviewed is illegal or essentially irregular and violative of established principles of law, the violation of which by the judgment has resulted, or reasonably may and probably will result, in substantial injury to the legal rights of the petitioner, and for which no other adequate remedy is afforded by law. In such cases the common writ of

certiorari will lie. See Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 So. 483, 140 So. 218; Miami Poultry & Egg Co. v. City Ice & Fuel Co., 126 Fla. 563, 172 So. 82; Bringley v. C.I.T. Corporation, 119 Fla. 529, 160 So. 680; Robinson v. City of Miami, 138 Fla. 696, 190 So. 35; Kilgore v. Bird, 149 Fla. 570, 6 So. (2nd) 541. The judgment in this case easily falls within these exceptions, which exceptions are recognized in both the majority and minority opinions in the recent case of Kilgore v. Bird, supra.

For the reasons above set forth, the writ of certiorari is granted and the judgment of the circuit court, brought before us on this petition for certiorari and accompanying transcript, is hereby quashed.

WHITFIELD, TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, JJ., concur.