**JANET REALTY CORPORATION, a Florida corporation, v. HOFF-MAN'S INC., a Florida corporation.**

17 So. (2nd) 114                                  June Term, 1943
December 23, 1943                                      En Banc
On Rehearing February 29, 1944
Petition for Rehearing Granted January 24, 1944

*Redfearn & Ferrell,* for petitioner.

*Simonhoff & Simonhoff* and *Ward & Ward,* for respondent.

PER CURIAM:

Certiorari is denied on authority of Jack Davis, trading and doing business as Jack Davis Motors, petitioner, v. The First National Bank of Miami, at Miami, Florida, respondent, decided November 22, 1943.

BUFORD, C. J., BROWN, THOMAS and SEBRING, JJ., concur.

TERRELL and CHAPMAN, JJ., dissent.

ON REHEARING GRANTED

CHAPMAN, J.:

On January 6, 1943, the Civil Court of Record of Dade County, Florida sustained a motion to strike a plea to an action on a promissory note and accordingly entered a judgment for the plaintiff. An appeal therefrom was perfected to the circuit court, and, after counsel was heard, an order of reversal was entered, thereby holding that the stricken plea constituted a good defense to the aforesaid action. The original plaintiff, by petition for a common law writ of certiorari filed here, contends that the order of reversal as entered by the Circuit Court of Dade County was erroneous and should be quashed.

The stricken plea which was the only plea before the court, alleged, in substance, that the plaintiff below owned described real estate situated in Miami Beach and located within about one block of a cafeteria or restaurant owned and operated by the defendant; the plaintiff contemplated the construction of a building on these premises and the operation of a cafeteria or restaurant (or the leasing of the property to a tenant for the construction or operation of a cafeteria or restaurant), which, if carried out, according to plans, would ultimately result in competition to the cafeteria or restaurant business of the defendant.

On April 22, 1941, the parties effected an agreement, reduced it to writing, and signed the same. The terms of the written agreement restricted the use of the described land

from date thereof until September 1, 1945. The consideration for the instrument was $8,900.00. The sum of $2,900.00 was paid in cash and the residue represented by four promissory notes. The first for $1,500.00 matured on or before January 15, 1943; the second for $1,000.00 matured April 15, 1942; the third for $2,000.00 matured January 15, 1943; and the fourth for $1,500.00 matured January 15, 1944. The first note, on its maturity was paid, and this suit was filed to enforce the payment of the second maturing note.

The consideration of the notes was that the payee and owner of the real estate, between the dates of April 22, 1941, and September 1, 1945, would not directly, or indirectly, operate, engage in or construct a cafeteria or restaurant on the described land, nor would it enter into a lease of the property to any tenant during the period for the construction and operation of a cafetreia or restaurant, and the owner of the land agreed, if the property was sold and conveyed during the period, the owner would place in the deed of conveyance a *restrictive clause* to the effect that the grantee in the proposed deed, if any, could not or would not be permitted to use the described property for cafeteria, restaurant or eating purposes until after September 1, 1945. Attached to the plea was a copy of the written instrument and by appropriate language made a part of the stricken plea.

The question presented for a decision by the record is whether or not the written agreement, *supra,* entered into between the parties, is void and unenforceable on the theory that it is in restraint of trade and contrary to public policy? The validity or invalidity of an agreement that in operation tends to restrain trade or to monopolize is in general determined by the elements of whether it is or is not injurious to the public. If injurious in any perceptible degree to any considerable portion of the public, the agrement is contrary to public policy and will not be enforced. If not injurious to the public it may be enforced. See Stewart v. Stearns & Culver Lbr. Co., 56 Fla. 570, 48 So. 19, 24 L.R.A. (N.S.) 649. Public policy favors competition in trade and opposes unreasonable restraints on useful commodities when the public welfare is injuriously affected.

Courts indulge the presumption that all contracts are lawful and if illegality exists it must be alleged and proven. Contracts existing between parties, generally, where no attempt is made to limit production, fix prices, or control commodities, are valid and enforceable. See Lee v. Clearwater Growers' Association, 93 Fla. 214, 111 So. 722.

Contracts entered into between parties, having as their objectives the removal of a rival competitor in a business are not to be regarded as contracts in restraint of trade, because they do not close the field of competition but affect only the parties to the agreement. See Massari v. Salciccia, 102 Fla. 847, 136 So. 552; Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32; Ericson v. Jayette, 149 Fla. 82, 5 So. (2nd) 453; Wilson v. Pigue, 151 Fla. 734, 10 So. (2nd) 561.

The facts in the case at bar can or may be distinguished from similar cases considered by this Court. We have here the owner of land by contract stipulating that the described land for a period of approximately four and one-half years shall not be used as a site for the location of a cafeteria or restaurant. If the property is sold by the owner during the period the deed or conveyance shall contain the restrictive covenant and for this four and one-half year agreement the consideration is $8,900.00.

Williston on Contracts, Vol. 5 (Rev. Ed.) par. 1642, pp. 4602-4606, states the rule viz:

"1642. Sale or Lease of Property with Restrictive Covenant.—The seller or lessor of property as distinguished from a business or good will may by a restrictive promise reasonably limited agree to refrain from himself engaging in a business or from disposing of his property in such a way that others can engage in a business which would impair the value of the property to the buyer for the purpose for which he intended to use it, or from selling other property remaining in his hands at a price which would depreciate the value of the buyer's purchase. Similarly, a buyer may make a reasonable contract restricting himself from using the property which he has bought in a way which would compete with the seller, or be obnoxious to him. Restrictions upon the use of real property for stated purposes is considered less

likely to affect the public interest than restraint of the activities of individuals, and accordingly such covenants are usually held not contrary to public policy. The seller of real estate may reserve an easement or he may bind the buyer by a contract, which will not create an easement in the land, to refrain from using his ownership in certain ways; as, for instance, in selling intoxicating liquors. The grantor may stipulate that the land shall not be occupied by certain social groups, or that it shall be used only as a residence.

"The only limits imposed by the law on the owner of property restricting his power to exact contracts from a subsequent purchaser to refrain from using the property in a certain way are those imposed by public policy, and though public policy forbids unreasonable restraint of trade, and therefore forbids a system of contracts attempting to control prices on resale, there seems no reason why it should prohibit contracts which reasonably protect a business of either buyer or seller without tending to affect the public injuriously by monopoly or enhancement of prices. . . . Where the effect of a covenant is for a short time and narrowly limited in space and will not produce a monopoly, its provisions for exclusive dealing are not objectionable. Thus, a covenant by a lessee to sell no beer, except that of a particular brewer, has also been upheld.

"A few late cases have upheld a bargain to restrict the use of certain property so that it should not compete with the promisee's business, although the bargain was not ancillary to a sale or lease of any property. By the usual tests, such a bargain is in unlawful restraint of trade, since it does not protect any interest passing from the promisor to the promisee. The theory supporting these cases is that the bargain is limited to certain specified property and is not as likely to injure the public as restraints upon persons in the exercise of their trades and profession. . . ." See: 17 C.J.S. par. 238, pp. 622-23; par. 247, pp. 630-31; par. 249, pp. 632-33; par. 250, pp. 633-34; Rubel Bros. Inc. v. DuMont Coal Co., 192 N.Y.S. 705; Vanover v. Justice, 180 Ky. 632, 203 S.W. 321, 1918E L.R.A. 662; Lumbermen's Trust Co. v. Title Ins. & Inv. Co., 248 Fed. 21; Leslie v. Lorillard, 110 N. Y. 519, 18 N.E.

363; Georgia Fruit Exchange v. Turnipseed, 9 Ala. App. 123, 62 So. 542; Kandis v. Pusch, 86 Ind. App. 246, 155 N.E. 618.

A restrictive clause in a deed to the effect that no intoxicating liquors shall be manufactured or sold on the described premises has been sustained. See Cowell v. Springs Co., 100 U. S. 52, 25 L. Ed. 547. Restrictive covenants upon a described piece of real estate for reasonable purposes and a reasonable length of time do not violate public policy. See Dicke v. Sears-Roebuck & Co., 115 Conn. 122, 160 Atl. 432. A contract by the owner of a theatre building based upon a valuable consideration by the terms of which the building is not being used as a show house or auditorium is not in restraint of trade. See Robey v. Plain City Theatre Co., 126 Ohio 473, 186 N.E. 1, 91 A.L.R. 975, and annotations on page 980 to 991. Consideration has been given to the authorities cited to sustain the challenged order of the lower court.

It was the view and conclusion of the civil court of record that the challenged plea was legally insufficient to constitute a defense to plaintiff's cause of action. No other defense was offered, and the plea being stricken, judgment was rendered in favor of the plaintiff. On appeal therefrom the circuit court was of the opinion, and so held, that the plea was a good defense to plaintiff's cause of action and therefore reversed the judgment of the civil court of record for further proceedings not inconsistent therewith. It is the legal duty of the civil court of record not only to follow, but to observe and conform to the rulings as made by the circuit court in a litigated cause. In light of the above cited authorities, it is our conclusion that the plea wholly fails to constitute a legal defense to the plaintiff's action. Query: Is the order of reversal and remand as entered on appeal by the Circuit Court of Dade County, Florida, such a final judgment as may be considered or reviewed here on petition for a common law writ of certiorari?

The answer to the posed question is the language and holding of this Court in Goodkind v. Wolkowsky, 151 Fla. 62, 9 So. (2nd) 553. Mr. Justice BROWN, speaking for the Court, in part, said:

"The general rule is that this Court will not, on certiorari, quash a judgment of the circuit court rendered in the exercise of its final appellate jurisdiction unless such judgment is a final adjudication of the case, or so final in its nature as to amount to a final adjudication. But there are certain well recognized exceptions. These are: Where the judgment of the circuit court is rendered without or in excess of its jurisdiction; where the judgment of the circuit court is a palpable miscarriage of justice; or where the result of such judgment would constitute a substantial injury to the legal rights of the petitioner; or where the judgment sought to be reviewed is illegal or essentially irregular and violative of established principles of law, the violation of which by the judgment has resulted, or reasonably may and probably will result, in substantial injury to the legal rights of the petitioner, and for which no other adequate remedy is afforded by law. In such cases the common law writ of certiorari will lie. See Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 So. 483, 140 So. 218; Miami Poultry & Egg Co. v. City Ice & Fuel Co., 126 Fla. 563, 172 So. 82; Bringley v. C.I.T. Corporation, 119 Fla. 529, 160 So. 680; Robinson v. City of Miami, 138 Fla. 696, 190 So. 35; Kilgore v. Bird, 149 Fla. 570, 6 So. (2nd) 541. . . ."

It is established that certiorari is a common law writ issuable in the sound judicial discretion of the court to an inferior court. It cannot be employed to take the place of a writ of error or appeal. It causes the entire record of the inferior court to be certified and brought up for inspection so that the superior court may determine from the face of the record whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of law. See Seaboard Air Line Ry. Co. v. Ray, 52 Fla. 634, 42 So. 714. Review by certiorari does not ordinarily extend to a consideration of the probative force of conflicting testimony but may include substantial errors of procedure that are calculated to materially injure the complaining party. Atlantic Coast Line R. Co. v. Florida Fine Fruit Co., 93 Fla. 161, 112 So. 66.

The general nature, purpose and function of the common

law writ of certiorari as enunciated by this Court in the recent case of Goodkind v. Wolkowsky, *supra,* is nothing more or less than a re-affirmance of the well established rule recognized by this Court in its adjudicated cases. See Midland Motor Car Co. v. Willys-Overland, Inc., 101 Fla. 837, 132 So. 692; Edwards v. Knight, 100 Fla. 1704, 132 So. 459; Brinson v. Tharin, 99 Fla. 696, 127 So. 313; American Ry. Exp. Co. v. Weatherford, 86 Fla. 626, 98 So. 820; American Ry. Exp. Co. v. Weatherford, 84 Fla. 264, 93 So. 740; First Nat. Bank of Gainesville v. Gibbs, 78 Fla. 118, 82 So. 618; Harrison v. Frink, 75 Fla. 22, 77 So. 663; Benton v. State, 74 Fla. 30, 76 So. 341; State v. Live Oak, P. & G. R. Co., 70 Fla. 564, 70 So. 550; Malone v. City of Quincy, 66 Fla. 52, 62 So. 922; Ragland v. State, 55 Fla. 157, 46 So. 724; Louisville & N. R. Co. v. Sutton, 54 Fla. 247, 44 So. 946; Seaboard Air Line Ry. Co. v. Ray, 52 Fla. 634, 42 So. 714; Hunt v. City of Jacksonville, 34 Fla. 503, 16 So. 398; Jacksonville, T. & K. W. Ry. Co. v. Boy, 34 Fla. 389, 16 So. 290; Deans v. Wilcoxon, 18 Fla. 513; Edgerton v. Green Cove Springs, 18 Fla. 528; Basnet v. City of Jacksonville, 18 Fla. 523.

Although the challenged order of reversal, with directions, as entered by the Circuit Court of Dade County in the case at bar in a technical sense may not be in terms a final judgment, it is palpably clear and certain that to submit the cause to a jury in the Civil Court of Record of Dade County on an issue made by a plea, which plea is legally insufficient, the legal effect thereof would be a departure from the essential requirements of the law. Such departure is one of the exceptions to the general rule pointed out and emphasized by Mr. Justice BROWN when speaking for the whole court in Goodkind v. Wolkowsky, *supra.*

On rehearing granted, the judgment of the court is that writ of certiorari is granted and the judgment of the circuit court is quashed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.

BUFORD, C. J., TERRELL and BROWN, JJ., concur.

THOMAS, ADAMS and SEBRING, JJ., dissent.