90 So.2d 330 (1956)
Millard M. MOSES, Petitioner,
v.
R.H. WRIGHT & SON, Inc., Liberty Mutual Insurance Company, and Florida Industrial Commission, Respondents.
Supreme Court of Florida. Special Division A.
October 17, 1956.
Rehearing Denied November 19, 1956.
*331 R.B. Huffaker, Bartow, for petitioner.
Macfarlane, Ferguson, Allison & Kelly, Hugh C. Macfarlane, Tampa, and Rodney Durrance, Tallahassee, for respondents.
THORNAL, Justice.
By petition for certiorari we are requested to review an order of the Florida Industrial Commission, affirming a workmen's compensation award made by a Deputy Commissioner, in favor of petitioner Moses who was dissatisfied with the award. A motion to dismiss the petition for insufficiency has been filed by the respondents.
We are called upon to determine whether there was competent substantial evidence to support the finding of the Deputy Commissioner with reference to the extent of petitioner's disability. On respondents' motion we must decide whether the petition for the writ sufficiently meets the requirements of our rule to merit consideration.
On June 3, 1955, the petitioner, Moses, suffered an electrical shock while holding onto a dragline when the boom came in contact with a high tension wire charged with electricity. Respondent, R.H. Wright & Son, Inc., was his employer. The current passed through the dragline, resulting in a burn of petitioner's right hand. The current then passed through his body making its exit through his left foot. This produced a burn and resulting ulcer on the foot. The only visible physical injuries were those above mentioned. However, a neurological and psychiatric examination revealed that, because of illiteracy and a peculiar spiritual philosophy, petitioner Moses, immediately subsequent to the accident and at the time of the hearing in December, 1955, labored under a disabling mental condition or psychosis.
It appeared to be petitioner's notion that the electrical shock was a form of supernatural warning or punishment. He interpreted it as an act of God indicating the displeasure of the Lord. He concluded that by this accident God had delivered him into the hands of the devil. Much could be written with reference to the nature of the man's mental condition. We mention in passing that it was not a neurosis. The neurological examination revealed no injury to the nervous system. The disabling condition, in the viewpoint of the medical expert who testified, was mental and in the form of a strange psychosis briefly mentioned above.
We are relieved of the necessity of passing on the question of the causal relationship between the accident and the ultimate injury suffered. This is so because the record reveals that the parties have stipulated that "the claimant suffered an injury by accident arising out of and in the course of his employment when he received an electrical shock". Our sole problem on the merits of the case is to determine whether the Deputy Commissioner had competent substantial evidence to support his finding which was that the petitioner Moses was entitled to compensation on the basis of a ten percent permanent partial disability.
The petitioner contends that there was no competent substantial evidence to support this conclusion. On the contrary, he asserts that the only competent substantial evidence available to the Deputy Commissioner showed that at the time of the hearing he was totally disabled albeit not permanently.
The respondents contend for the application of the so-called competent substantial evidence rule and take the position that there was such evidence to support the Deputy Commissioner's conclusion.
On the basis of the expert medical testimony we are confronted with a peculiar dilemma. In a written report on his examination *332 of petitioner the neurologist stated that at the time of his examination, on October 4, 1955, the man was "totally disabled by psychological consequences of an accident which occurred on or about June 3, 1955". The doctor then was of the view that the man would not improve until he experienced some sort of spiritual rebirth. He advised that in this petitioner's mind all decisions in the ultimate are made by God and that any adjudication that he was permanently disabled or totally disabled for any particular period of time would definitely convince the man that God Himself had so determined the issue. This in turn would convince him that God was punishing him pro tanto by the adjudication. Although admitting that the man was totally disabled in the sense that he couldn't work, the doctor suggested "that this man's best interests would be served by disposition of the case on the basis of ten percent permanent partial disability". The idea back of this suggestion was that even though totally disabled, if the man were advised that he was only ten percent disabled, he would feel that God had forsaken him only ten percent of the way and to that extent was contributing to his recovery and rehabilitation.
We cannot dispose of this case with the conclusion that this man is laboring under a so-called "compensation neurosis". Although the neurologist testified that settlement of this claim would in the ultimate contribute to recovery, the man's condition did not result peculiarly from the anxiety over the litigation itself. His peculiar psychosis was related to his strange spiritual concepts. To him settlement of the litigation in a satisfactory fashion merely means an indication that God had overthrown the devil and had again aligned Himself on the side of the petitioner. See Larson's Workmen's Compensation Law, Sec. 42.24; Michigan Law Review, Vol. 53, p. 898.
Very obviously we are not endowed with the divine capacity to bring relief to the petitioner's tortured mind. On the basis of this record, the disabling mental condition is very real. The doctor, upon whose testimony we are compelled to rely, clearly eliminated any aspect of fraud or purposeful malingering. Fortunately, medical science has developed to the point where competent men, such as the witness in this case, can detect and measure bona fide mental illnesses and distinguish them from those conceived in fraud.
The only conclusion we can reach from this record is that at the time of the hearing the petitioner was totally disabled within the definitions of total disability contained in our Workmen's Compensation Act, F.S.A. § 440.01 et seq. We emphasize that there is no justification whatever for the conclusion that the disability is permanent. On the contrary, the record clearly suggests that the claimant might gradually improve and that a settlement of the claim would definitely expedite the improvement process.
Our finding that the record shows total disability at the time of the hearing in December, 1955, does not preclude a further consideration of this case by appropriate procedure under the Workmen's Compensation Act. At such subsequent consideration with the help of medical experts there will be an adequate opportunity to ascertain the progress, if any, that has been made since the first hearing and a revaluation of the extent of disability on the basis of subsequently appearing facts.
While giving full weight to the competent substantial evidence rule to which this Court is definitely committed, we are bound to find here that the only competent substantial evidence before us shows that when the matter was heard in December, 1955, the petitioner was then totally disabled and had been since his injury. Consequently, it was error for the Deputy Commissioner to find that he was permanently partially disabled to the extent of ten percent. See Lyng v. Rao, Fla. 1954, 72 So.2d 53.
In view of the questions raised by the motion to dismiss the petition, we deem it *333 appropriate to set up briefly the requirements of our rules with reference to a petition for writ of certiorari to the Florida Industrial Commission seeking a review of Workmen's Compensation awards.
The document filed in this court by the petitioner and styled "Petition for Writ of Certiorari" is one composite document which appears to be a combination petition and brief. Apparently the petitioner has undertaken to combine the allegations of his petition with a discussion of the law he considers applicable. There is no separate brief. The "Petition" is in three parts designated "History of the Case", "Question Involved" and "Argument". There is a fourth section designated "Conclusion".
As pointed out above in the instant case we have carefully considered the entire record despite the fact that the petition does fail to comply with our applicable rules. A petition for certiorari is directed to the sound judicial discretion of an appellate court seeking review of orders of a lower tribunal. In the exercise of this discretion in the instant case we have passed on the petition. Janet Realty Corporation v. Hoffman's, Inc., 154 Fla. 144, 17 So.2d 114.
We think it advisable to invite the attention of the Bar to the rules of this Court, 31 F.S.A., applicable to a petition of this nature. Supreme Court Rule 16 generally governs the procedure for obtaining review of compensation orders of the Florida Industrial Commission. Such review is obtained by issuance of a writ of certiorari under Section 5, Article V, Florida Constitution, F.S.A. Rule 16, subd. 2, requires the filing of a petition for the writ giving notice to the Industrial Commission and opposing parties together with service of a copy of the petition on each party or his attorney and "a copy of the supporting brief on the petitioner." By Rule 16, subd. 5, it is required that briefs be prepared in the manner provided by Supreme Court Rule 36.
Under Supreme Court Rule 22 it is required that a petition for writ of certiorari "shall contain a concise statement of the cause and the reasons relied on for granting the writ." It is inappropriate for the petition itself to contain any elaborate presentation of the record or any discussion of applicable authorities. Such matters are presented by the briefs. The petition should contain merely a concise and pointed statement of the cause supported by "the reasons" forming the basis of seeking review. These "reasons" actually are analogous to assignments of error on appeal. They should set forth succinctly the points wherein it is considered that the Industrial Commission committed error. The supporting brief should be a document separate and apart from the petition.
Requirements for the brief are adequately set forth in detail in Supreme Court Rule 36. Attention is invited particularly to the provisions of Rule 36, subd. 6. It is inappropriate for a petitioner to present in a single document styled "Petition" matters and things which are required to be presented by the brief. By analogy, the petition is the petitioner's complaint against the Industrial Commission. The brief should present argument to support the complaint. The fact that Rule 16, subd. 4, requires the Industrial Commission to transmit the original record to this Court does not relieve the parties of the responsibility of attaching to their briefs the appendix required by Rule 36, subd. 6(e). This appendix is important for the simple reason that it abstracts from the entire record those salient aspects of the matter upon which the parties rely to sustain their respective positions in this Court. Actually, unless there is a conflict between the appendices filed by the opposing parties, there is no obligation under our rules for this Court to examine any other portion of the record on appeal (capital cases are the exception).
As pointed out above, we have considered the entire record in the instant case *334 in view of the discretionary nature of the particular petition, therefore, the motion to dismiss the petition will be denied.
We do not wish to appear unjustly critical of the petition before us. We merely felt that it would be of service to the Bar to point out the procedural requirements in matters of this nature in the hope that more cautious adherence to the rules will follow in the future. See, Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659.
The petition for certiorari is granted. The order appealed from is quashed, and the cause is remanded to the Deputy Commissioner for further proceedings consistent with this opinion.
DREW, C.J., and HOBSON and O'CONNELL, JJ., concur.