THORNAL, Justice.
By a petition for a writ of certiorari, we are requested to review an order of the Florida Industrial Commission vacating an order of a deputy commissioner who had found that an injured employee had reached maximum medical improvement and was entitled to 10% permanent partial disability benefits.
The sole point is whether the order of the deputy commissioner was supported by competent substantial evidence which accorded with logic and reason.
The respondent Eagan suffered an industrial injury on May 7, 1959, while employed by the petitioner Johnny’s Welding Shop. The injury occurred when Eagan received a 220-volt electric shock upon coming into contact with a welding machine. By the order under review, the deputy commissioner found that Eagan reached maximum medical improvement on September 13, 1960. Pie concluded that the claimant had suffered an aggravation of a pre-exist-ing personality weakness as a result of the electric shock. He decided that the aggravation had produced permanent partial disability of 10% of the body as a whole. He made an award accordingly. Upon review, the majority of the respondent Commission concluded that the deputy committed error in finding that the claimant had reached maximum medical improvement. The Commission decided that “there is a dearth of evidence in the record to indicate that claimant’s present disability is less than total.” The order of the deputy was vacated and the matter was remanded for further proceedings 'to determine “when and if claimant had reached maximum medical improvement * * *" One member of the Commission dissented with the view that the order of the deputy was adequately supported by competent substantial evidence.
The petitioner here contends that the respondent Commission merely substituted its view of the evidence for that of the *472 deputy and thereby exceeded the scope of review available to it.
The respondent asserts that the record supports a conclusion that the claimant has not been able to return to work and is therefore still totally disabled.
The deputy commissioner heard extensive testimony by three psychiatrists, a neurosurgeon, two ophthalmologists, and a specialist in internal medicine. In addition to the medical testimony the deputy heard the testimony of the claimant and his wife. At the conclusion of the hearing the deputy entered a comprehensive order in which he analyzed and evaluated the testimony of the various doctors. He found that the claimant had suffered no organic or functional injury but that a pre-existing personality weakness had been triggered into a neurosis by the electric shock. He found that the neurosis aggravated the pre-exist-ing condition to the extent of producing a 10% permanent partial disability of the body as a whole.
Although there were conflicts between the doctors who testified in behalf of the claimant and those who testified in behalf of the carrier, it is clear that the deputy commissioner accepted the testimony of the latter. He was authorized to do so and we can find no justifiable basis in this record for disturbing the deputy’s order.
The psychiatrists were all in accord with the conclusion that the claimant Eagan had throughout his life, suffered a personality weakness which was described as “markedly passive dependent.” Two of the doctors expressed the view that the man’s “emotional adjustment was always somewhat tenuous.” Their conclusion was that the psychological trauma of the accident was sufficient to produce a state of anxiety from which the man could extricate himself only by “using a defense mechanism of hysteria.” They concluded that he suffered from a neurosis which they described as conversion hysteria. The doctors, whose testimony the deputy accepted, specifically expressed the opinion that the claimant had! reached maximum medical improvement on September 13, 1960. The deputy expressly so found. The majority of the Full Commission vacated his order despite the fact that the record presented clear-cut, positive competent evidence to support the deputy’s conclusion.
In analyzing the claimant’s problem-several of the psychiatrists testified that it involved two factors. One was the permanent weakness emanating from the man’s passive-dependent type of personality. This condition had existed all of his life. The other factor was described as a. secondary gain related to the circumstances surrounding the illness. These included! what the claimant viewed as the ability to-avoid responsibility, the opportunity to be-cared for, and to have his natural leaning towards dependency gratified, to benefit financially and to receive care and attention; from family and friends. In other words,, the deputy found with ample evidentiary support that the claimant’s problem was-not an inability to work but rather a lack of desire to work.
There was testimony which the Full Commission emphasized in its order to the-effect that the man “would” go to work if placed under great stress or pressure. On this basis the Full Commission concluded that the claimant was not yet well enough, to return to any gainful employment.. However, the evidence justified the deputy’s conclusion that the man could go to-work and that the industrial accident had adversely affected his earning capacity to-a limited degree only.
The Full Commission placed some reliance on our decision in Moses v. R. H. Wright & Son, Inc., Fla., 90 So.2d 330. The Moses case involved a substantially different situation. In the first place Moses, suffered from a psychosis which is a much, more severe type of illness than the neurosis suffered by Eagan. We understand that a psychosis involves the entire personality and a complete break with reality. *473 In such a condition the individual is unable to function in an organized manner. Such was the condition that afflicted Moses. We are told that a neurosis involves merely an attempt to cope with situations and frustrations by various devices in the form of •defense mechanisms. Furthermore, in the Moses case the medical testimony was without dispute to the effect that the man was actually totally disabled. The device of finding him only 10% disability was frankly stated to be merely an expedient to pacify the claimant’s distorted anxiety which resulted from his psychotic affliction. On the •other hand, in the instant case there was positive testimony that the claimant was not totally disabled and that his pre-existing personality weakness had been aggravated only to a limited extent by the psychological trauma suffered as a result of the electric shock.
The deputy commissioner had before him abundant competent substantial evidence to support his compensation order. The evidence comported with logic and reason. When the Full Commission vacated the order of the deputy under the foregoing circumstances, it necessarily transcended the scope of review available to it. United States Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741. The Full Commission thereby deviated from the essential requirements of the law and its order must be set aside.
An incidental point requires consideration. The deputy commissioner refused to allow an expert witness fee to a Doctor McIntyre. The Full Commission set aside this order also and directed the allowance of a witness fee to the doctor. On this point we are in accord with the ruling of the Full Commission and find no justification to disturb its order.
However, in other respects and for the reasons which we have announced, the order of the respondent Commission vacating the order of the deputy commissioner is quashed and the matter is remanded to the respondent Commission for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and O’CONNELL, JJ., concur.