**THE PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY OF CHATTANOOGA, TENNESSEE, v. NOREEN F. MATHERS.**

26 So. (2nd) 814            June Term, 1946
July 26, 1946            Division B
Rehearing denied July 25, 1946

*Bouvier, Green & McCaul,* and *Knight, Underwood & Cullen,* for petitioner.

*Blackwell, Walker & Gray,* for respondent.

THOMAS, J.:

The petitioner is seeking here an order to quash a judgment of the Circuit Court of Dade County holding valid one entered 21 March 1939 by the judge of the civil court of record in favor of the respondent, Noreen F. Mathers.

This extended litigation, which began in 1938, has many angles, phases, and ramifications. A detailed account of them would require much space in the writing and much time in the reading, but for the purposes of this decision this history may be drastically condensed.

The respondent filed her declaration claiming damages for the death of her husband who at the time of his fatal injury

held a policy issued by the petitioner containing a provision insuring him against loss of life "as the result of any accident which occurs while the Insured is *not* engaged in the performance of and which is not contributed to directly or indirectly by any of the duties of his occupation." (We have italicized "not.")

Upon demurrer the declaration was held so defective that a final judgment was entered upon it, and the plaintiff appealed to the circuit court, where each count of the pleading was determined to be sufficient, all judges participating and all agreeing. So the judgment of the lower court was reversed.

We pause here to announce our view that the law of the case was then and there established, at least so far as plaintiff's right of recovery was concerned, subject of course to her ability to prove what she had alleged and subject to any affirmative defenses which might be pleaded and substantiated. We cannot agree, as petitioner contends, that the law governing the controversy was settled by a succeeding decision of the circuit court reversing the judgment for the plaintiff pursuant to a verdict of a jury.

Upon return of the case to the trial court, the civil court of record, pleas of general issue were filed and also special pleas. There is no need further to allude to the latter because no testimony whatever was introduced by the defendant (petitioner here) except with reference to attorneys' fees. At the time of submitting the issues to the consideration of the jury at the ensuing trial, the court had but to decide whether the testimony elicited by the plaintiff was sufficient to support a verdict that the policyholder was killed while not engaged in his occupation and that the accident which resulted in his death was not attributable directly or indirectly to the duties of that occupation. The jury returned a verdict for the plaintiff, and the court entered judgment.

Again there was an appeal, and again the judgment was reversed.

When the controversy returned to the trial court, the parties stipulated that the facts remained as they had been developed at the former trial, so the court, recognizing the

stipulation and obeying the mandate of the circuit court, perfunctorily caused a verdict to be returned and a judgment to be entered for the defendant. Back to the circuit court went the case, and this time by its judgment now being reviewed the appellate tribunal decided it was right in the first place. We think so too.

To repeat, the law of the case was settled on the first appearance of the contest in the circuit court, at least to the extent that if the plaintiff proved her case as she had alleged it, and if no counteravailing defenses were offered and established, she was entitled to recovery. The latter condition seems to have been eliminated when the defendant offered no evidence on the main issue; the former seems to have been resolved by the jury in their first verdict, for there was no dispute about the facts. The manner in which the insured was killed was not controverted. The only question was whether his activities at the time were so connected with his occupation as to place him without the protection of the insurance contract. Here again it should be observed that they were delineated in the proof precisely as they were outlined in the pleading.

We conclude that in the final appeal the circuit court did as it should have done in the second appeal—that is, decided that the declaration in the first appeal having been tested and found good and the proof having substantiated its allegations, the judgment on the first verdict should have been upheld.

As we have already said, the last judgment of the circuit court ordered the first judgment of the civil court of record reinstated. Although the former, being one of reversal, had the appearance of lacking the quality of finality necessary to a writ of certiorari (common law), nevertheless it was in effect of that character because if obeyed a final judgment would inevitably result.

The petitioner has posed two other questions. One—the last—is decided by what we have already remarked. The second constitutes a challenge to the procedure followed by the circuit court in entertaining and determining the appeal. The cause was heard by Judges Barns, Holt, and Milledge. The first dissented to the opinion of the other two that

the original judgment of the civil court of record, which we have already described, be reinstated.

We must decide whether the appellate tribunal which entertained, considered, and determined the last appeal was properly constituted, and in dealing with the problem we get little aid from our opinion in Goodkind v. Wolkowsky, 151 Fla. 62, 9 So. (2nd) 553, because, despite the author's observations about Chapter 20309 (Section 26.54), infra, the act there applied was Chapter 15666, Laws of Florida, Acts of 1931, which has meanwhile been specifically repealed by Chapter 20361, Laws of Florida, Acts of 1941 (Section 33.11, Floride Statutes, 1941, and F.S.A.).

We gather from the briefs of counsel that a decision of the present question requires a construction of Section 33.11, supra, Section 26.54, Florida Statutes, 1941, and F.S.A. (Chapter 20309, Laws of Florida, Acts of 1941), and Rule 17 of the circuit court governing appellate procedure. We add on our own account that a solution of the problem also involves a consideration of paragraph (b), Section 4 of Article V of the Constitution.

Under Section 26.54, appellate jurisdiction in a circuit with more than four judges must be exercised by those judges sitting in divisions of three judges each, "inclusive of the presiding judge," and the court is empowered to adopt its own rules governing the *"practice* and *procedure* in the complete exercise of its appellate jurisdiction . . . "  We have supplied italics. The rule, Number 17, doubtless adopted by the circuit court pursuant to the act just quoted, provides that there shall be two divisions for appellate purposes, the first to "consist of the judges assigned to Division A, B and D"; the second, of "those assigned to A, F and C or E." At the time the appeal was heard the circuit court was organized as follows for the settling of appeals: Division No. 1.—Hon. Paul D. Barns, Presiding Judge (A), Hon. Ross Williams (B), and Hon. George E. Holt (D); Division No. 2—Hon. Paul D. Barns, Presiding Judge (A), Hon. Stanley Milledge (F), and Hon. Richard H. Hunt (C) or Hon. Marshall C. Wiseheart (E).

It appears that Hon Ross Williams was disqualified, having

presided in the case as judge of the civil court before he became circuit judge. Inasmuch as no occasion has been shown for a reference to his disqualification or for Judge Holt's taking the place of Judge Hunt or Judge Wiseheart if the matter was heard by Division No. 2, it is clear that Judge Milledge merely sat for Judge Williams in Division No. 1 when the appeal was heard by that group. So much for the organization of the circuit court as an appellate one.

These statutes, Section 26.54 and 33.11, when considered together are positively bewildering, as will appear from analyses we shall now attempt. The first was intended to apply only to the exercise of appellate jurisdiction in circuits having more than four judges, while the second, although there is a reference in the title to circuits where more than four judges are sitting, is actually an amendment of Section 11 of Chapter 11357, Laws of Florida, Acts of 1925, and there is no mention in the body of the act about the number of judges. When we examine the section as amended we find that the subject dealt with its appellate jurisdiction for circuit courts of counties where there are civil courts of record—regardless of the number of judges. Both acts were passed at the same session of the legislature and were approved by the governor six days apart. Two categories are established—namely, circuit courts with more than four judges and circuit courts in counties having civil courts of record. Dade County, where this petition for certiorari originated, is in a circuit having more than four judges *and* in that county there is a civil court of record, so that the circuit court of Dade County when sitting to hear appeals from the civil court of record falls in both classifications.

The question immediately becomes complicated because under the first statute it is specifically provided that appellate jurisdiction in all appeals (except from municipal courts and courts of justices of the peace) shall be exercised by the circuit judges sitting in divisions, any division consisting of three judges, inclusive of the presiding judge. Inferentially an appeal can be determined by a majority of the division, or two judges, as was attempted in the present case. Under the latter, and later, statute the appeals from the civil court of

record (but not from any other court) are reviewed *"in the same manner* and with like powers as the Supreme Court (reviews) . . . the judgments . . . of such Circuit Court . . . " (Italics ours.)

If read in pari materia a conflict at once appears because of the difference in the methods of review outlined in the first section (26.54) and in paragraph (b), Section 4 of Article V of the constitution, to which the second section (33.11) evidently refers. If the first statute is taken literally, an appeal from the civil court of record could be heard by the presiding judge and two other circuit judges and the vote of two of them would determine the controversy. Under the provisions of the constitution mentioned in this opinion, the supreme court sits in divisions, but a dissent of a member of a division or of the chief justice causes the appeal to be referred to the other justices. Even under Section 4 (a) of Article V of the Constitution, when the supreme court sits as a "single body," a majority of the members (4) must be present to "constitute a quorum for the dispatch of business."

It is patent to us that an appeal such as we are now considering from the civil court of record of Dade County to the circuit court could not be determined in accord with both statutes—that is, by a division of only three circuit judges, *and* in the manner appeals from the circuit court are determined by the supreme court—by three members and the chief justice concurring, or if they be not in unanimous agreement, by a majority of all the members of the court.

Inasmuch as the two statutes about which we have said so much are not apparently reconcilable, it seems to us that we must resort to two familiar rules of construction in order to dispose of the instant appeal. Statutes passed at the same session of the Legislature will be considered in pari materia and will be construed so that each will be effective if that is possible. State ex rel. City of St. Petersburg v. Noel, 114 Fla. 188, 154 So. 219. When, however, they are repugnant, the one last enacted will control. Routh et al. v. Richards, 103 Fla. 752, 138 So. 69. Try as we may, we cannot reconcile Sections 26.54 and 33.11; so we feel impelled to hold that the latter, being the later, applies; that appeals to the circuit court from

the civil court of record in Dade County should be entertained and determined as nearly as practicable as appeals are disposed of by the supreme court.

We shall not stop here and leave the matter in this quandary because we feel an obligation to shed some light on the procedure which should be followed by the circuit court of Dade County in considering appeals. It seems to us justice requires that a majority of the circuit judges sitting should be in agreement on the judgment to be entered in an appeal. Such an end may be attained if the appeal is considered by four members of the court, whether they be called a division or a quorum of the entire membership, and they are in accord. Should there be a dissent, the matter may be submitted to the other members so that eventually a majoriy of all the judges of the circuit will concur on the judgment to be entered. This would harmonize with the manner of deciding cases here and would, in our opinion, be a fair, just, and satisfactory way of disposing of appeals.

We fully realize that had we decided the last question first it would not have been necessary to decide the first question at all; however, we have followed our present course in the hope that we might definitely contribute to a speedy conclusion of litigation which had its inception more than eight years ago.

The petition for certiorari is granted; the last judgment is quashed for the sole reason that a sufficient number of circuit judges did not concur in it.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.